LULU L. WAGONER, Appellant, v. GEORGE C. R. WAGONER, No. 23518.

LULU L. WAGONER, Appellant, v. GEORGE C. R. WAGONER, No. 23519.

LULU L. WAGONER, Appellant, v. CHARLES E. MOHRSTADT, Sheriff, et al., No. 23520.

LULU L. WAGONER v. GEORGE C. R. WAGONER, Appellant, No. 23818.

LULU L. WAGONER v. GEORGE C. R. WAGONER et al., Appellants, No. 23819.

In Banc, December 30, 1924.

1. **MAINTENANCE: Lump Sum.** Under the broad terms of the statute (Sec. 7314, R. S. 1919) authorizing the court to grant to the wife a maintenance allowance "for such time as the nature of the case and the circumstances of the parties shall require" and "from time to time make such further orders touching the same as shall be just" and to compel the defendant "to give security for such maintenance," the court, which has previously granted to the wife a monthly maintenance allowance of four hundred dollars and retained jurisdiction of the case, may, upon the application of the defendant, where the wife is fifty-six years of age and the facts show that reconciliation is impossible and that there has already been multitudinous litigation, modify the order so as to award her maintenance in a lump sum of fifteen thousand dollars. Maintenance in law is but a divorce from bed and board, and it has always been true that in such case a gross sum, instead of a monthly allowance, may be decreed. The statute is broad enough to apply to both parties.

2. ———: **Divorce: Judgment in Another State: Wrongful Former Decision.** The facts stated in Wagoner v. Wagoner, 287 Mo. 567, 590, show that that the Nevada court had jurisdiction of the divorce case, and this court should have given credit to the foreign judgment rendered therein, and it is a very serious question whether that case was properly ruled, the decision being based, as it was, upon Haddock v. Haddock, 201 U. S. 563, which has been one of the most misleading decisions in judicial history, but has been given a proper construction in Howey v. Howey, 240 S. W. 450.

306 Mo.—16

3. ———: **Injunction: To Restrain Legal Action and Interference with Execution.** Equity will restrain the further prosecution of legal actions, which have become vexatious and are used to defeat just legal claims; but the petition for an injunction must allege a cause of action authorizing equity to interfere, and the proof must sustain the allegations. Plaintiff, having recovered judgment for maintenance, caused an execution to be issued and levied upon the interests of her husband in the stock of two corporations, and his mother proposed to file a replevin suit, claiming ownership of said stock in herself; but one day before the date of sale under the execution, plaintiff filed an injunction suit against defendant, his mother, her attorney, the sheriff and other parties supposed to be interested in the stock, to restrain them from bringing such replevin suit or from interfering with the execution sale, alleging that defendant possessed great political power and by the exercise of such power had defeated the claims of plaintiff for five years; that the sheriff was his ally; that a conspiracy existed between all the defendants; that they have combined and federated to defeat the execution sale by wrongful and corrupt use of the process of the court, namely: that it will be falsely and corruptly alleged in a replevin suit to be brought that the plaintiff therein is the owner of all right, title and interest in said stock; that the petition will be verified by false and corrupt affidavit; that the defendants will fraudulently and corruptly obtain an order of delivery; that the sheriff will wrongfully release the property and return the execution unsatisfied; that if the conspiracy should fail to defeat the sale by replevin they plan and purpose to accomplish the same result by a third-party claim, their purpose being to starve plaintiff into surrender; that the remedy on the replevin bond will be wholly inadequate, because the conspirators intend to give a grossly inadequate bond; and that unless plaintiff be permitted to sell under the execution she will be compelled to submit to whatever outrageous and inequitable conditions defendants may see fit to impose. *Held*, that said petition failed to state a cause of action, and there having been absolutely no proof to sustain its allegations of either conspiracy or fraud, the unauthorized injunctive order becomes material in a consideration of its effect upon other branches of the case, and especially upon the right of the mother to redeem stock claimed by her and sold to plaintiff at said execution sale.

4. ———: **Sequestration: Maintenance in Gross.** The trial court having properly adjudged that, instead of a monthly allowance, defendant should pay maintenance in a gross sum, and defendant having tendered that sum into court, the plaintiff's prior suit for sequestration of defendant's property becomes a mere moot question, and should be dismissed.

Wagoner v. Wagoner.

5. ————: **Allowed Gross Sum: Redemption of Stock.** The court having properly adjudged (a) that the plaintiff is entitled to maintenance in a designated lump sum, and (b) that an injunction order forbidding defendant's mother, in whose name certain stock of a corporation was carried on its books, from maintaining replevin to establish her ownership of such stock, and forbidding her and defendant from interfering with the sale of said stock under execution issued upon plaintiff's maintenance judgment, was unauthorized and void, and (c) that at said sale the stock was sold by the sheriff to plaintiff, the court should, in order that there may be an end to the strife and long litigation, sustain the offer of defendants to redeem said stock so sold to plaintiff by tendering into court the full amount of her bid and asking that the money be credited on her judgment for maintenance.

Citations to Headnotes: 1, Husband and Wife, 30 C. J. pars. 899, 901, 902; 2, Divorce, 19 C. J. par. 824; 3, Injunctions, 32 C. J. par. 530; 4, Dismissal and Nonsuit, 18 C. J. par. 84 (1926 Anno); 5, Husband and Wife, 30 C. J. par. 726 (1926 Anno).

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss,* Judge.

AFFIRMED (*in part*) and REMANDED (*in part, with directions*).

*W. B. & Ford W. Thompson* and *Randolph Laughlin* for Lulu L. Wagoner.

(1) The suit for maintenance is an equitable action. R. S. 1919, sec. 7314; Klepper v. Klepper, 193 Mo. App. 46; Dorrance v. Dorrance, 257 Mo. 326; Pickel v. Pickel, 243 Mo. 641. (2) "The maxim that he who comes into equity must come with clean hands is a cardinal one. It touches to the quick the dignity of a court of conscience itself. Hence, its application does not depend upon the averments of the pleadings, or the wish of counsel, but it may be invoked and pleaded *ex mero motu* by the court." Creamer v. Bivert, 214 Mo. 486; Stilwell v. Bell, 248 Mo. 61. (3) In this case, the husband comes before the court convicted of actual fraud. Wagoner v. Wagoner, 287 Mo. 567. Nor does he even now show repentance. On the contrary, he persists in his

aggressive defiance and contempt of the judgment and process of the court, and yet has the hardihood to ask the court to mitigate the rigor of its justice. Under the well-settled rule, the defendant was entitled to no hearing or relief until he places himself in a proper attitude to ask it. Bates v. Bates, 145 N. Y. Supp. 411; Walker v. Walker, 82 N. Y. 260; Brinkley v. Brinkley, 47 N. Y. 40; Harney v. Harney, 96 N. Y. Supp. 905. (4) The court had no power whatever to give maintenance in gross in a suit brought for separate maintenance, and certainly no power to fix a gross sum without the wife's consent. A judgment in a maintenance case for monthly sums is not such a judgment as is entitled to full faith and credit, because it is for sums falling due after the rendition of the judgment. Such a decree is not a final judgment as to payments in the future. Lynde v. Lynde, 181 U. S. 183; Isreal v. Isreal, 148 Fed. (C. C. A.) 576, 9 L. R. A. (N. S.) 1168; Valequet v. Valequet, 177 Fed. 994; Lynde v. Lynde, 162 N. Y. 405, 48 L. R. A. 679.

*Abbott, Fauntleroy, Cullen & Edwards* for George C. R. Wagoner.

(1) Where continuing alimony is granted, the court may afterward entertain an action to compel the husband to pay a gross sum in lieu of the periodical payments. Demonet v. Burkart, 23 Mo. App. 308; Plotke v. Plotke, 177 Ill. App. 344; Schlarb v. Schlarb, 168 Iowa, 364; Holm v. Holm, 151 Iowa, 159; Sparhawk v. Sparhawk, 120 Mass. 390; Sheafe v. Sheafe, 36 N. H. 155; Buzzo v. Buzzo, 45 Utah, 624; King v. Miller, 10 Wash. 274; Weber v. Weber, 153 Wis. 132; 45 L. R. A. (N. S.) 875, Ann. Cas. 1914 D, 593. (a) The allowance made by the court is adequate and quite generous. (b) Alimony may be reduced where the husband's income is decreased. Kingman v. Kingman, 200 Ill. App. 338; Parsons v. Parsons, 26 Ky. Law Rep. 256; Aldrich v. Aldrich, 166 Mich. 248; Barbaras v. Barbaras, 88 Minn. 105; Kunze v. Kunze, 53 N. Y. Supp. 938. Or, where the

wife inherits property sufficient for her needs. Matthews v. Matthews, 173 Pac. 1007. (2) The property may be redeemed or the sale vacated if the sale was wrongfully held. Finke v. Craig, 57 Mo. App. 393; Ray v. Stobbs, 28 Mo. 35; Stanton v. Johnson's Estate, 177 Mo. App. 58; State ex rel. v. Innes, 137 Mo. App. 424. (3) The sale sought to be vacated partakes of the nature of a judicial sale in equity and is peculiarly under the control of the court. Wyrick v. Wyrick, 162 Mo. App. 732; Klepper v. Klepper, 193 Mo. App. 55; State ex rel. v. Innes, 137 Mo. App. 424; Rorer on Judicial Sales (2 Ed ) pp. 231, 232, 233; Deadrick v. Smith, 6 Humph. 146; Rorer on Judicial Sales (2 Ed.) secs. 590-592; 23 C. J. p. 557, sec. 452c; Ayers v. Baumgarten, 15 Ill. 447. (2) The sale of the two shares of stock should be vacated because the sale was held by virtue of an injunction; vacated for illegality and as oppressive, and plaintiff cannot be given any of the fruits or benefits of an illegal, vacated injunction. State ex rel. Mastin v. McBride, 81 Mo. 355; Laws 1854-5, p. 464, sec. 1; State ex rel. Nolte v. Reynolds, 223 S. W. 408; R. S. 1919, secs. 1635-36; 23 C. J. p. 564; Van Norden v. Morton, 99 U. S. 378; Moore v. Korte, 77 Mo. App. 500; Mo. Constitution, art. 2, secs. 10, 28; Finke v. Craig, 57 Mo. App. 393; State ex rel. v. Innes, 137 Mo. App. 424; Restitution, 18 Ency. Pl. & Pr. 870; Lake Shore v. Taylor, 134 Ill. 603; R. S. 1919, sec. 1678; 2 Page on Contracts, sec. 1103; 15 Am. & Eng. Ency. Law, 1015, par. b; 15 Am. & Eng. Ency. Law, 934; W. Va. Trans. Co. v. Ohio River Pipe Line Co., 22 W. Va. 60. A creditor is not entitled to the remedy by creditor's bill and the remedy by execution at the same time, and if the proceeding by execution is begun subsequent to the creditors' bill, the former suit may be pleaded in bar or abatement. Dalton v. Barron, 239 S. W. 97; Zoll v. Soper, 75 Mo. 462; Bobb v. Woodward, 50 Mo. 101; Welch v. Mann, 193 Mo. 326; Field v. Jones, 10 Ga. 229; McGough v. Ins. Bank, 2 Ga. 151, 46 Am. Rep. 382; Taylor v. Lander, 61 Kan.

588; Crosby v. Lumberman's Bank, Clarke Ch. (N. Y.) 234; Yantis v. Burdett, 3 Mo. 245; Walker v. Charlot, 197 Mo. App. 544; Sharkey v. Kiernan, 97 Mo. 102; King v. Ayres, 168 Mo. 250; Holloway v. Holloway, 103 Mo. 274

GRAVES, C. J.—Upon a re-assignment, after the rejection of one opinion, these cases have fallen to me. A casual glance at the record will convince one that a statement of the cases, and their several facts, is not to be made without some careful analysis of the record.

In the Circuit Court of the City of St. Louis there were pending three separate cases for disposition, numbered respectively, on the dockets of that court, No. 95956, No. 11540, and No. 47800. They were in different divisions of the court, but were finally gotten together in a single division, and there tried together, so far as the taking of evidence was concerned. They were intimately related and properly so tried. Case No. 95956 is an action for maintenance, and is called the Maintenance case, and is No. 23518 on our docket. Case No. 11540 is called the Sequestration case (in equity) and upon our docket is numbered 23519. Case No. 47800 is an injunction proceeding, and is called in the record the Injunction case, and is numbered upon our docket 23520. Lulu L. Wagoner is the plaintiff and appellant in these three numbered cases. In them all George C. R. Wagoner is defendant, but in the latter two there were other defendants. Defendant George C. R. Wagoner appealed in the Sequestration suit (there being cross-appeals) and his appeal here is numbered 23818. He and other defendants likewise appealed in the Maintenance suit, and that is numbered 23819, in this court. This appeal was not from the judgment on the merits, but from a ruling upon motions to redeem. So that we have five numbers for the record in the three cases before us. As was said, Wagoner's appeal in the Maintenance case only goes to certain proceedings therein, and not to the actual judgment for Maintenance, which was one entered

upon his motion.   These matters will appear more in detail later.

### Maintenance Suit-Appeal of the Plaintiff.

Defendant Wagoner (in the Maintenance case) had sued his wife Lulu L. Wagoner for divorce, but dismissed the action.   Later the wife brought suit for maintenance, and on February 11, 1916, obtained a judgment by default, by which she was allowed maintenance at the rate of $400 per month.   November 21, 1916, Wagoner obtained a divorce from his wife in the State of Nevada, and paid such allowance to said date, and upon such payment filed a motion asking that said judgment for maintenance be declared satisfied and vacated, and that his wife be enjoined from collecting maintenance after November 21, 1916.   The trial court sustained Wagoner's motion, and the wife appealed to this court, where the judgment was reversed.   [Wagoner v. Wagoner, 287 Mo. 567.]   Of this case we may have something further to say.   Our opinion left the maintenance judgment of $400 per month intact.   In the proceeding in this court (287 Mo. 567) the husband sought to vacate the maintenance judgment from the date of his alleged decree of divorce in the State of Nevada.

On September 12, 1921, the defendant filed a motion in this maintenance case to modify the judgment, setting up changed conditions of the parties, and asking that the court make the maintenance allowance a gross sum, so that the case might finally be disposed of as between the parties.   According to one brief there had been nineteen lawsuits between these parties from 1914 up to the present proceeding.   The court sustained the motion to modify, and fixed the gross sum for maintenance at $15,000, in addition to what defendant had paid up to the date upon which he filed the motion to modify.

Defendant tendered in court the said sum of $15,000, and from this judgment lodges no complaint.   His appeal in the maintenance suit is grounded upon a motion filed therein, relative to the sale, under execution, of some

corporate stocks. The plaintiff appealed from this modified judgment for maintenance ·in the gross sum of $15,000. Such is an outline of case No. 23518, on our docket, so far as plaintiff is concerned.

### The Sequestration Suit—Plaintiff's Appeal.

In August, 1917, Lulu L. Wagoner, filed a bill in equity, the general purport of which was to have the court ''appoint a receiver, sequestrator or trustee, for the property of George C. R. Wagoner, and divest the title of all said property of the defendants herein, and vest the same well and truly in said receiver, sequestrator, or trustee.'' The defendants in this case were, in addition to George C. R. Wagoner, S. Z. Wagoner, his mother; Henry E. Wagoner, a brother; Wagoner Undertaking Company, a corporation; H. H. Wagoner Realty Company, a corporation; German-American Bank, a corporation; William L. King and Mrs. N. B. McEwen. The charge is that all the defendants had conspired together to so hold the alleged property of George Wagoner, in the two corporations, in such manner as to defeat the plaintiff in the collection of her maintenance money. Defendant filed amended answer, counterclaim and crossbill, and plaintiff a reply. Both are lengthy, and will be noted later if necessary. Upon the trial the court dismissed both the petition of plaintiff, and the cross-bill of defendants. Both plaintiff and the defendant George Wagoner appealed from this judgment. Plaintiff's appeal is our No. 23519, and defendant's appeal is our No. 23818. Details will be left to the opinion.

### The Injunction Case—Plaintiff's Appeal.

In this case, filed September 5, 1921, it is averred that the Sheriff of the City of St. Louis was finally forced to levy upon all the right, title and interest of George Wagoner in and to the stock of both the Wagoner Undertaking Company and the H. H. Wagoner Realty Company, and had given notice to sell the same on September 6, 1921, at twelve o'clock noon, of that day; that

Sheriff Mohrstadt, and the other defendants, had con-
spired together to defeat the collection of plaintiff's
judgment through this execution sale, and some of them
(other than the sheriff) would bring a replevin suit
against the sheriff, and the sheriff would turn over the
property on a fraudulent bond, in such suit, which suit
would be based upon a false affidavit; or, that there would
be a fraudulent third-party claim made for such prop-
erty, so levied upon by the sheriff and that such claim
would be false and fraudulent, but the sheriff would
turn over the property on insufficient bond, and plain-
tiff would lose the fruits of her execution. The petition
is long on alleged frauds and conspiracies, and on imag-
inary suits and third-party claims based thereon, but
singular to say it sufficed for a restraining order with-
out notice. The defendants in this action were, George
Wagoner; his mother, S. Z. Wagoner; Patrick Cullen,
the counsel of the two parties first named; the sheriff,
Charles E. Mohrstadt; Mrs. N. B. McEwen and the Unit-
ed States Bank. The restraining order was as broad as
the petition. September 6th, P. H. Cullen and Mrs. S.
Z. Wagoner filed a motion to vacate such temporary re-
straining order. This motion was heard, and a tempo-
rary injunction granted against all of said defendants,
although only Mohrstadt, the sheriff, and Cullen, the
lawyer, and Mrs. Wagoner appeared. The sale pro-
ceeded without let or hindrance at noon on September
6th, under the protecting wings of this temporary in-
junction. Answers were later filed, and the cause tried,
and judgment entered dismissing the plaintiff's bill.
Plaintiff appealed, and her appeal is case No. 23520, on
our docket, as stated above. Defendant likewise ap-
pealed, because his cross-bill was dismissed and his ap-
peal is No. 23816, as above stated. Thus far we have
outlined the three appeals of the plaintiff and one of
the appeals of the defendants. This cross-bill sought to
have a sale of stock set aside, and to have an order to
redeem from such alleged unlawful sale. Bear in mind
that this appeal of defendants grows out of a ruling in
the Sequestration case, mentioned above.

### Defendant's Other Appeal.

After the execution sale, which sale was under the alleged authority of the judgment in the Maintenance case, the defendants George Wagoner, and his mother, S. Z. Wagoner, filed motions to set aside the sale as to certain shares of stock bought in by Lulu L. Wagoner, and asking that they, for stated reasons, be allowed to redeem. These motions in the said Maintenance case were overruled, and these rulings constitute the other appeal of defendants, and such case is our No. 23819. Such is a short outline of a rather complex record.

I. In orderly procedure the determination of the plaintiff's appeal in the Maintenance case, is of first importance. As said this case originated by the filing of a motion by the defendant for the modification of the judgment for maintenance ($400 per month) on the ground that there had been changes in the respective financial conditions of the parties. The defendant claimed that he was less able to pay by reason of decreased inability to pay, and he further claimed that the wife had come into a considerable estate from which she was and would receive a large annual income so long as they were man and wife, and in the event this relationship was dissolved the estate became hers absolutely. He also asked that the future maintenance should be adjudged in a gross sum, so that he might discharge it in full, at one time, and obviate continual hostilities and litigation, as between him and his wife.

The wife denied the allegations of this motion, and evidence was taken thereupon. The learned trial judge heard the evidence *pro* and *con,* and finally adjudged maintenance in gross in the sum of $15,000, which sum the husband tendered into court in satisfaction of the judgment.

The learned trial judge filed a written opinion, in which he states the facts. Upon the financial and other relationships of these parties he says:

''For the purpose of this litigation the ownership of the stock of the Wagoner Undertaking Company was, approximately, one-half in George and one-half in his mother. One-third of the realty was also owned by George. [Here follows a discussion of the Injunction suit.]

''As to future maintenance for plaintiff there is no doubt, under the statute, that the court has the power in that suit to modify the order for maintenance. Furthermore, such power was expressly preserved in the original judgment.

"It is the duty of the court, in passing upon the motion to modify the allowance for maintenance, to consider the present financial condition of the parties. The statute, Section 7314, directs the court to adjudge maintenance for such time as the nature of the case and the circumstances of the parties shall require, and gives the power to the court to enforce its order by sequestration or otherwise. This court has no knowledge of what showing was made at the time of the original order of $400 a month, but it seems clear that the present condition of the parties requires this amount to be reduced.

''The original order fixing a monthly allowance of $400 finds the allegations in the petition to be true. The petition referred to in the order alleges that George C. R. Wagoner owns all the stock in the Undertaking Company. He did not appear at that hearing. Since that order was made there has been a substantial change in the financial condition of both parties.

''Of the twenty-four shares originally owned by George one share was sold under execution levied by plaintiff in 1917 and bought by his mother. Of the remaining twenty-three shares, twenty-one were sold in September, 1921, by the sheriff, under execution levied by plaintiff in the Maintenance case. At this sale plaintiff bought two shares. George's mother bought nineteen shares. She claims to have paid for these shares with money that the Undertaking Company paid her as

salary; the evidence fails to show a legal claim on her part for salary. The money which she paid for the nineteen shares was the money of the Undertaking Company. Consequently, the stock so purchased became the property of the stockholders of that company in the proportion of their stock ownership, that is, approximately, ten shares to Mrs. S. Z. Wagoner, and nine shares to George. Adding to his nine shares the two shares of George unsold, makes the present stock ownership as follows: thirty-seven shares by S. Z. Wagoner; eleven shares by George Wagoner, the defendant, and two shares by plaintiff purchased by her at the execution sale; total capital stock, fifty shares.

"George also owns, in equity, one-third of the one hundred shares of the Wagoner Realty Company. The difficult question is to determine what will be a proper future allowance to the plaintiff.

"Bearing upon the value of the stock to the Undertaking Company, we have in evidence figures submitted by its bookkeeper, which show a present value of approximately $40,000. It is also in evidence that the twenty-one shares sold under execution last month brought an average price of $1300. True, this price was paid by the parties in interest—no outside bidders. Under the circumstances, it is hard to say how far this price represents true value, but the fact remains that it was paid at public sale. The bookkeeper testified, also, that last year's profits were approximately $12,000. Taking the highest figures, namely, $1300 a share, the fifty shares of capital stock are worth $65,000. Of this, as shown above, George, in equity, owns eleven-fiftieths, or $14,300. The evidence shows the net value of the Realty stock to be $100,000. George, in equity for the purposes of this suit, owns of this $33,333, making his present worth in the stock of both companies $47,633. No other property is shown in him.

"The financial condition of the plaintiff is established more definitely. At the hearing she states that she

had approximately $9000 on hand; that she has a half
interest in her mother's estate; such interest was shown
to be worth $24,000. She also owns the two shares
purchased by her at the execution sale. She claims no
debts owing by her; she has paid large amounts to her
attorneys and has $9000 on hand, making her present
worth $35,600.

"The defendant urges that the court make an order
in gross for future maintenance. There seems to be no
exact precedent for such an order. Whether the court
has the power to make such an order seems to be an
open question. In the last reported case, of Pickel v.
Pickel, such an order was made by the circuit court.
The Supreme Court found it unnecessary to pass on this
question and declined to do so.

"It is obvious, however, that it is in the interest
of the plaintiff and against the interest of the defendant
to have a judgment in gross. The situation is different
from a final decree in divorce. There the parties are
separated definitely and finally. In a maintenance case
the theory of the law is that the wife should be main-
tained during the period of separation, which may be
altered. It is hard to perceive, however, any ground on
which the plaintiff can object to judgment in gross. The
defendant might do so. The defendant asks for it in
this case. The statute directs the court to fix the amount
for such time as the nature of the case and the circum-
stances of the parties shall require. The unhappy re-
lation of these parties—they seem to be hopelessly and
finally separated—the multitudinous litigation past,
present and in dreary prospect—nineteen cases up to
this time—makes it highly desirable to reach a finality.

"In my opinion, under all the circumstances, the
court has discretionary power to adjudge a gross sum,
and that it will be a proper exercise of that discretion
to do so.

"After careful consideration of all the circumstances, the court has reached the conclusion that plaintiff should have a judgment for $15,000."

The trial judge was an ex-judge of this court, and seems to have gone into the facts carefully. While upon some things issue might be taken with him upon the facts found, but not upon the issue of the relative financial conditions of the parties. He has, upon this matter, given the wife the full benefit of all the evidence upon her side of the case. It follows therefore that the facts justify the finding of $15,000. The question left is the legal right to allow in gross.

II.    In addition to what is said above it should be borne in mind that the wife was at the trial fifty-six years old, and according to her own evidence there is no possibility of a reconciliation. Both parties so indicate, and the court so finds. Why in such event the action was not for absolute divorce instead of one for maintenance, can only be read between the lines. These inferences we may well omit.    The defendant, in the divorce proceeding, has been largely over-estimated as to financial ability. But recently we had an example. Action was urged here to have an inspection of certain corporation books, in which the charge was made that they would show the husband to be worth a million or more. Fortunately for the court the husband died, and the closing orders of the case were made upon the theory of actual facts, wherein it appeared that the husband's ability to pay was limited to an estate of much less than $100,000. The facts show that this present case was infected with an imaginary financial worth of the husband. According to actual figures (made and found by the trial court) the payment of the $15,000 will make the husband pay to the wife about one-half of his actual worth, and this too, giving the wife the advantage of much disputed evidence. But this is not the point we have reserved

*Maintenance in Gross.*

for this paragraph of the opinion. The real question now before us, is whether or not thĕ court erred in fixing maintenance in a lump sum, thus avoiding continuous litigation between two parties, both of whom admit that there is no chance of reconciliation.

The statutory provision (Sec. 7314, R. S. 1919) is the Missouri authority for maintenance actions. To say the most, it does not prohibit the granting of maintenance in gross. It is to be granted "for such time as the nature of the case and the circumstances of the parties shall require . . . and from time to time [the court may] make such further orders touching the same as shall be just." The statute further provides that the court can compel the defendant "to give security for such maintenance." In other words the powers are broad, but having at all times the best interest of the parties. Under this statute the court, if it was thought advisable, could compel payment into court of an amount sufficient to cover the maintenance judgment for any given period, or for the whole time, if the circumstances demanded it. But we do not have to go that far in this case. Under the original judgment the court retained full jurisdiction of the case, as is and was contemplated by this statute. The statute contemplates orders from time to time touching the question of maintenance, but does not undertake to limit the power and discretion of the court as to the character of such subsequent orders. The question of maintenance in gross has never been actually pressed in this court, but we have affirmed the action of a trial court in so adjudging maintenance. [Pickel v. Pickel, 291 Mo. 180.]

Outside of this State there are cases on the subject. They are mostly in cases where the wife asked for such a decree, but applying the reason of the rule it must be said that if one party is entitled to such a decree, the other is likewise so entitled. In other words, if the wife can have the maintenance so fixed, there can be no doubt that under the broad terms of our statute the husband would be entitled to a like judgment. Some of the cases

of mere divorce from bed and board along this line, are are follows: Chase v. Chase, 105 Mass. l. c. 387, where the gross sum of maintenance was fixed at $1100; Orrok v. Orrok, 1 Mass. 341, where a gross maintenance was fixed at $1000. In 19 Corpus Juris, page 260, is a general discussion of the subject. Thereat it is said:

"Statutes authorizing the granting of a divorce from the bonds of matrimony as well as from bed and board, and empowering the courts to make such orders for alimony, or the maintenance of the wife, as shall be deemed reasonable and just, have been liberally construed, so as to authorize the allowance of permanent alimony, either in gross or in installments, as the best interests of the parties under the circumstances of the case seem to require; and this discretionary power to award a gross sum has not been limited to cases of divorce from the bonds of matrimony, but has been exercised where the divorce was from bed and board."

In this case we have a broad discretionary statute pertaining to maintenance, which in law is but a divorce from bed and board. The age of the parties, their financial conditions, and the reiterated fact from the wife, as well as the husband, that there could be no reconciliation presents a state of facts authorizing a judgment in gross, such was entered here. It is not necessary to discuss what would be the effect of this decree should the husband predecease the wife. He has accepted the decree, and so far as the wife is concerned it should be and is affirmed. We affirmed such a judgment for $10,000 in the Pickel case, supra, and no good reason appears for not affirming this judgment in the maintenance case.

III. The authorities are so universal to the effect that alimony (which includes maintenance) should be reduced upon a proper showing of the changed financial and other conditions of the parties that we have not lengthened this opinion with a list thereof. The rule is not different where the divorce is from bed and board,

Wagoner v. Wagoner, 287 Mo. 567.

rather than an absolute divorce. The strong circumstance in this case is the fact that reconciliation is recognized as impossible by both parties. Of course the age of the wife and her present financial condition is a further factor, as is also the reduced ability of the husband to pay upon the basis of the original default judgment. These matters we have fully considered in the ruling, supra, and only reiterate them here in view of what comment we promised upon Wagoner v. Wagoner, 287 Mo. 567. In that case at page 590 it is said:

"The service of the original process in the Nevada suit was by publication and the mailing of a copy of the notice published to the appellant at the Windermere Hotel in St. Louis. She was living with her own people at Greenville, Illinois, at the time, but received the letter in due time and took it to St. Louis and gave it to her attorneys, Lehmann & Lehmann and Thompson & Thompson. She was without money and unable to go to Reno or to take any other steps in the case, while her attorneys were unwilling to make or finance any defense in Nevada, and did not think it was necessary on the ground that the Nevada court had acquired no jurisdiction. In this way it came to pass that she made no appearance in that suit, which resulted in the decree of divorce upon which respondent depends to sustain the judgment of the trial court."

Later (page 597) the case of Haddock v. Haddock, 201 U. S. 563, is relied upon, but there is a failure to draw the distinction between either the New York rule, or the Connecticut rule, and the Missouri rule, as to the credit to be given to foreign judgments. The question is not really in this case now, except as a mere circumstance, but it is a very serious question as to whether or not the original Wagoner case (287 Mo.) was not wrongly ruled here. [Howey v. Howey, 240 S. W. 450.]

To the Howey case we gave much thought, and its conclusion is yet satisfying. It is an opinion by the Court in Banc, and the other was simply in division. The

306 Mo.—17

facts stated in the 287 Missouri show jurisdiction in the Nevada court, and this court should have accredited that decree. [Howey v. Howey, 240 S. W. l. c. 453 et seq.] This under the well established Missouri rule. Haddock v. Haddock has been one of the most misleading opinions in judicial history, but this court in the Howey case and a preceding case has given, in my judgment, the proper construction to it.

IV. In disposing of the three several appeals of the plaintiff it occurs to us that what is known as the Injunction case should receive our attention next. Plaintiff in the Maintenance case first proceeded by what she terms a sequestration proceeding, by which she sought to sequester all the property of the husband, including the stock in both corporations. Not content with this proceeding she later sued out an execution, and under it stocks in both corporations were levied upon as the property of the husband. It was evidently thought that Mrs. Wagoner, the mother, who had been and was then claiming title to these stocks, would seek some legal action to test her rights, or alleged rights, to these stocks. To thwart the purpose of a legal proceeding to test the title and interest of these stocks, plaintiff brought an injunction suit to restrain Mrs. Wagoner, and others named, from instituting any kind of a legal action to try the title to the property levied upon and advertised by the sheriff. This remarkable proceeding was filed on September 5, 1921, and the sale of the stock under execution was advertised to take place on September 6, 1921, at noon. From here on we prefer to let Judge FERRISS, the learned trial judge, speak as to both pleadings and facts. He does it thoroughly. In written opinion filed, of this Injunction case, he says:

"While that suit [that is, the Sequestration suit, No. 11540] was pending, and shortly before the time at which it was set for trial, the plaintiff issued an execution in the Maintenance suit and levied upon the interests of George in all of the stock of both companies.

"S. Z. Wagoner proposed to file a replevin suit, claiming the ownership of the property in herself. The Injunction suit, No. 47800, now under consideration, was filed and an order was obtained forbidding any interference with this sale. The Injunction suit sought to restrain S. Z. Wagoner from bringing a suit at law to contest the ownership of this property. This was a right given to her by statute as a claimant to the property. It is hard to perceive upon what grounds a court of equity could enjoin the bringing of such a suit. But if the court had jurisdiction to issue injunction, still I find that the facts do not support the allegations of the petition in that Injunction suit.

"It is alleged in that case that George Wagoner is a power in Republican politics and that, by the exercise of such power, he had defeated the claims of the plaintiff for five years, and that the sheriff was his ally. There was absolutely no attempt to prove this allegation.

"The petition further alleges a conspiracy between the defendants in the Injunction suit, namely, Charles E. Mohrstadt, sheriff, Patrick H. Cullen, Mrs. S. Z. Wagoner, Mrs. M. B. McEwen and the United States Bank. There is absolutely no evidence of such a conspiracy. The testimony of the sheriff is that all steps taken by him were upon the advice of his counsel. Patrick H. Cullen was attorney for Mrs. S. Z. Wagoner, and, as far as the evidence shows, acted only as such. There is no evidence whatever connecting Mrs. M. B. McEwen or the United States Bank with the matter. Mrs. S. Z. Wagoner proposed to file a replevin suit through Cullen as her attorney. There is nothing in the evidence to impugn his good faith in the matter.

"The petition then proceeds to make allegations as to what the parties intend to do in the future, namely: That if plaintiff is not allowed to sell she will be compelled to accept a grossly inadequate compromise; that the defendants have combined and federated to defeat

the execution sale by wrongful and corrupt abuse of the processes of this court, namely, that it will be falsely and corruptly alleged in a replevin suit to be brought by some one of the defendants that plaintiff is the owner of all right, title and interest etc.; that its value is some inconsequential sum; that the petition (in replevin) will be verified by false and corrupt affidavit; that the defendants will fraudulently and corruptly obtain an order of delivery; that the sheriff will wrongfully release the execution and will release the property and return the execution unsatisfied; that if the conspiracy should fail to defeat the sale by the replevin it is the plan and purpose of defendants and conspirators to accomplish the same result, either by third-party claim or other means unknown to plaintiff; that the defendants, Cullen, Wagoner and McEwen had been *particeps criminis* with George Wagoner in his fraudulent efforts to cheat and defraud the plaintiff of her marital rights; that defendants intend to appeal from decree to be rendered against them in the Sequestration suit and starve plaintiff into surrender, and that unless she should be permitted to sell under the execution she will be starved into surrender and compelled to submit to whatever outrageous and inequitable terms defendants may see fit to impose; that relief cannot be obtained in the Sequestration suit; that the remedy on the replevin bond would be wholly inadequate, because the conspirators intend to give a grossly inadequate bond.

"There is no proof before the court to sustain these allegations as to the future, even if they are statements of actionable facts.

"The petition further alleges that the plaintiff cannot obtain relief in the Sequestration suit, but in the Sequestration suit plaintiff alleges that she cannot obtain relief at law. There is no ground for the allegation or the assumption that the Replevin suit would be conducted otherwise than according to law, or that if any improper steps should be taken, there would not be

adequate redress.  The petition intimates that the law
would be helpless in the hands of a band of conspirators.
In my judgment the petition in the Injunction suit fails
to state a cause of action, and the proof now under con-
sideration by the court fails to sustain it.''

We agree with Judge FERRISS, both as to the insuffi-
ciency of the petition, and the utter absence of proof.
There are instances where equity will restrain the fur-
ther prosecution of legal actions, but such a situation is
neither pleaded nor proven here.  Legal actions may be-
come vexatious and equity, in hard cases, may intervene,
but such is not this case.  This petition is an anomaly
in equity pleading.  How the chancellor *nisi* permitted
an order restraining the legal action is beyond our con-
ception.  It was done, however, and the result of this ac-
tion is material upon another question in the case.  As
to this action (the Injunction case) the appeal of the
plaintiff is without merit.  So in this respect the judg-
ment *nisi* must be affirmed.

V.  The learned trial judge disposed of the seques-
tration proceeding, thus in his opinion:

''Under the ruling of the court the payment of the
judgment for alimony in gross will end the strife, and
the Sequestration case, No. 11540, need not
then be further maintained.  The judgment
for maintenance in gross should be paid within a time to
be fixed by the court and in full for further maintenance
from and after the entry of the order.''

Sequestration.

As said, the learned trial judge stopped all the strife
by fixing the sum of $15,000 in addition to the vast sum
theretofore paid to plaintiff, as the final payment
to be made.  In a preceding paragraph we have
sustained this decree for maintenance in gross.  Defend-
ant tendered the amount into court.  From this judg-
ment which he has performed, or tried to perform, he has
taken an appeal.  If the judgment in the Maintenance
case is right, as we have ruled, and defendant has ten-

dered full satisfaction thereof, as the record shows, then, as the learned trial court ruled, the Sequestration suit becomes a mere moot case, and the judgment *nisi* dismissing the bill should be affirmed.

VI. The foregoing disposes of each appeal taken by the plaintiff in the Maintenance suit. We have left only the appeals of defendants. A short *resume* of the record is required. February 11, 1916, Lulu L. Wagoner obtained judgment, by default, in her Mainte-

Redemption.

nance suit for the sum of $400 per month. November 21, 1916, George Wagoner obtained a divorce from the wife Lulu, in the State of Nevada, and he then paid up all accrued maintenance charges, and moved the court to relieve him from further liability because of his alleged divorce. The circuit court granted him the relief prayed, and that case (upon the appeal of the wife) came to this court. [Wagoner v. Wagoner, 287 Mo. 567.] The wife was duly served in this case, and we have discussed it as far as is necessary, supra. As said, it is but a circumstance, and really water which has passed over the mill. The husband has been compelled to meet this judgment (whether right or wrong) in full, and until it was modified by the circuit court, upon facts fully justifying the modification, as we have ruled, supra. It suffices to say that our mandate (affirming the judgment) was filed on April 22, 1921.

While the Maintenance suit was pending, and on August 13, 1917, the Sequestration suit above mentioned was instituted, and pended to the last. No effort was made to try it pending the appeal in the Maintenance case. Further facts are thus outlined by counsel for George Wagoner and his mother, thus:

"On June 23, 1921, the Sequestration case was transferred to Division 14, and was set for trial on September 7, 1921, and each side had announced ready to try it on said date, and on September 7, 1921, on account of the

execution sale and the Injunction suit, the hearing of said Sequestration case was passed to September 28, 1921, by consent.

"In the meantime, and while said Sequestration case was pending, and while the same had been set down for hearing September 7, 1921, plaintiff sued out an execution in the Maintenance case, No. 95956, the affidavit therefor being filed on the 10th day of June, 1921. By virtue of said execution, on the 25th day of August, 1921, the sheriff levied on all the capital stock of the Wagoner Undertaking Company and the H. H. Wagoner Realty Company, and advertised for sale all said shares of stock (and sold twenty-one of said shares of the Undertaking Company) on the 6th day of September, 1921, being the day before the Sequestration case was set for hearing in Division No. 14.

"The defendants sought to stop this double-barreled proceeding, but were unsuccessful. The defendants claimed the two proceedings carried on concurrently were inconsistent, oppressive, and constituted abuse of the process and powers of the court. The Sequestration suit was bottomed on the theory that plaintiff had no remedy at law; that the shares of stock were not subject to sale under execution, and that the purchaser at such a sale would receive no valid title, and the property, if sold under execution, would not and could not be sold in a fair or lawful manner, or at a fair price."

Defendants after quoting from the petition in the Sequestration case further charge:

"In the fact of these allegations the plaintiff sued out execution and proceeded to levy on the same property which she averred could not be lawfully sold under execution, thereby taking in the same litigation positions diametrically opposed to each other—positions absolutely inconsistent.

"The defendant, by motion duly made, called the attention of the court to this inconsistent position and prayed the court to compel her to elect between the two

inconsistent remedies. The court (Judge HAMILTON) held this motion under advisement until the day (or, rather, the night) before the sale and then overruled it, and Geo. C. R. Wagoner saved exception and the same was allowed to him.

"Mrs. S. Z. Wagoner was in possession of, and claimed to be the owner of, all the stock levied upon, and on September 5, 1921, the said Lulu L. Wagoner brought the suit known as No. 47800 wherein she sought an injunction against S. Z. Wagoner, P. H. Cullen and a large number of other persons, restraining them from bringing any suit in replevin or filing any claim whatsoever which would make an issue wherein could be tested the validity of the claim of Mrs. S. Z. Wagoner or anyone else to the ownership of said shares of stock, and she also prayed for a mandatory injunction against the sheriff, commanding him to proceed with the sale at the time and place indicated in the notice of sale.

"In the nighttime, without notice to any of the adverse parties, the circuit court, through Judge HAMILTON, issued a temporary restraining order in accordance with the prayer of said petition, giving the defendants the privilege of appearing Tuesday, September 6, 1921, at 10:30 o'clock forenoon, to show cause why this temporary restraining order should not be continued in full force until the final hearing and determination of the cause.

"The court will notice that the hour of the sale was twelve o'clock, and the hour in which the defendants were given an opportunity to show cause was just one hour and thirty minutes prior to the time of the sale. Defendants, Cullen and Wagoner, appeared at that time and filed a motion to vacate the order granting the temporary restraining order. The court, after a hurried hearing, refused to vacate the temporary restraining order, granted a temporary injunction against all the defendants, commanding the sale to proceed, and enjoined the defendants named from filing a suit in replying or in

any way interfering therewith or filing any claim to the shares of stock levied upon.

"Upon this state of the record, the defendants being enjoined, the sale took place and twenty-one shares of stock of the Wagoner Undertaking Company were sold for the sum of $26,480. One of said shares of stock was knocked down by the deputy sheriff to Lulu L. Wagoner on a bid of $700, and another for $1275. Immediately upon the ending of the sale George C. R. Wagoner caused to be paid to the sheriff the full amount due on the execution, including costs, and also the $1975 which it is claimed Mrs. Lulu L. Wagoner bid for the two shares in question, and the money for these two shares was left in the hands of the sheriff, and was there at the time of the trial, was tendered to Lulu L Wagoner, and she would not take it; and is still tendered to her.

"Thereafter the defendants, S. Z. Wagoner, George C. R. Wagoner, Wagoner Undertaking Company and H. H. Wagoner Realty Company, before any return was made on the execution, served notice upon the sheriff that they had filed a cross-bill, the object and general nature of which was, among other things, to vacate and set aside the sale under execution, occurring on the 6th day of September, 1921, and notifying the sheriff to preserve the *status quo* of the property until said matters could be heard on the 28th, 29th and 30th days of September, 1921, and on September 12, 1921, the said defendants filed their amended answer and cross-bill setting forth various reasons why the sale of said two shares of stock should not be carried out.

"During the said October Term, on December 3, 1921, George C. R. Wagoner, in Case No. 95956, filed his motion to redeem said two shares of stock. Likewise, on the same date, S. Z. Wagoner filed motion to redeem said two shares of stock.

"On October 3, 1921, it was stipulated that the three causes should be heard together so that the evidence introduced in one might be considered, so far as applicable, in the determination of all three cases.

"Upon this hearing the court, Judge FERRISS presiding, held that the injunction in Case No. 47800 was illegally and improperly issued, and the bill was dismissed. The court also dismissed the Sequestration suit, but refused to vacate the sale of the two shares of stock, and overruled the motion of George C. R. Wagoner and S. Z. Wagoner to redeem said shares of stock, whereupon the appeal was perfected to this court by George C. R. and S. Z. Wagoner. Other features of the case will be set forth in connection with and as part of our argument following."

The foregoing outlines the facts of the contention involved in defendants' appeals. Both are from orders made in the Maintenance case, as has been stated. The legal phases we take next.

It is not necessary for us to discuss the legal status of the question as to the suing out of an execution during the pendency of the Sequestration suit. The Sequestration suit was one in equity and bottomed on the ground that there was no legal method of reaching this stock, because of the fact that it stood in the name of Mrs. Wagoner, the mother. It is sufficient to say that the execution was issued pending a determination, in equity, as to the ownership of the stock. The sheriff levied upon the stock and advertised it for sale at noon on September 6, 1921. On the day before, plaintiff, Mrs. Lulu Wagoner, brought the Injunction suit, upon which the trial court and we have ruled. The trial court properly held that the petition therein stated no cause of action, and further that the evidence absolutely failed to establish the alleged facts in the petition. Mrs. Wagoner, the mother, was and for a long time had been claiming the stock which was sold at this execution sale. The law gave her the right to claim her alleged property right by a legal action, either by replevin or a third-party claim. The trial court, without warrant of law, prevented her from exercising this legal right Under the law she was entitled to have a jury determine her claim

to this stock. This right was wrongfully denied to her, as was ruled by the trial court, and as is approved by us herein. With her hands tied by an oppressive and wrongful act two shares of this stock was bought in by Lulu Wagoner. The bids (over $1900) were simply credited upon the maintenance judgment. The amount of the bids were deposited in court, with a prayer, that, under all the circumstances, she should be allowed to redeem from the wrongful sale. The injunction proceeding upon the pleadings and upon the facts was unwarranted under the law. It served to give Lulu Wagoner an ostensible title to the two shares of stock mentioned above. It should not (under all the plain and admitted facts) be permitted to stand. If Mrs. Lulu Wagoner gets the money tendered to her for the redemption of this stock, her judgment will be satisfied to the very letter. The circumstances are such that further friction between these parties should be precluded. Already suit after suit has followed the wake of the maintenance judgment. Now that the judgment has been paid in full, further troubles should be avoided by permitting the redemption of the stock upon the receipt of the purchase price. This was asked both in the equity and the legal action. The refusal of the trial court to allow this redemption of the stock is the only error we find in this record.

The judgment *nisi* is affirmed in all respects, except as to the redemption of the stock. As to that it is reversed and remanded with directions to permit the redemption of the stock sold to Lulu Wagoner, she taking down the money tendered for that purpose. In all other respects the judgment is affirmed.

Judgment reversed and remanded, with the limitations aforesaid. All concur, except *Walker, J.,* absent.