Claire H. **STAUFFER**, Plaintiff-Appellant,

v.

Charles E. **STAUFFER**, Defendant-Respondent.

No. 7687.

Springfield Court of Appeals.

Missouri.

May 9, 1958.

Roderic R. Ashby, Charleston, for plaintiff-appellant.

T. J. Brown, Jr., Charleston, for defendant-respondent.

RUARK, Judge.

This is an appeal from a judgment for separate maintenance. The only question involved is the amount of the award.

Plaintiff and defendant were married February 5, 1917, and were separated in June 1950. Their thirty-three years together make an American saga of hard work, frugality, and accumulation. Plaintiff is of French extraction. Defendant is of Swiss descent. Apparently they had little of the world's goods to begin with. They both worked hard. Plaintiff worked as a busy farm wife both indoors and out. She helped clear some of the land they were to farm. As the couple prospered and hired help was obtained on the farm, plaintiff cooked and washed for this help. But no hired help was had for the inside of the house. Along with other duties was the

rearing of a family of children, all now grown and gone from the home. Neither plaintiff nor defendant made trips or had social or "outside" interests. As defendant testified, plaintiff is a "home body" and her principal interests are in her children and grandchildren. The only luxury we find the plaintiff to have contemplated was a trip back to Europe to visit her relatives. Defendant agreed he had promised that plaintiff should have such a trip; but it appears that the long planned for journey has not been made. It is not, however, shown that defendant forbade or refused to provide for such trip.

During the latter years of her life plaintiff has suffered from various illnesses which necessitated several periods of hospitalization. These included two operations for kidney stones and one for appendicitis, and some operations concerned arthritis or a broken hip which resulted because, as defendant puts it, "she stepped in a hole where the hay baler had been sitting." The medical and hospital bills have been considerable, and the record does not indicate any quibble on the part of defendant about their payment.

The parties have acquired considerable worldly goods. Defendant admitted to assets which amounted to approximately $375,000. From a review of the whole evidence we are of the opinion that a figure in the neighborhood of $425,000 would probably not be excessive. These assets include bills and notes amounting to approximately $170,000, eight farms totaling 2309 acres, and four residences. Practically all these assets were accumulated through the joint efforts, hard work, and frugality of both the parties, and a portion of the real estate is held in their joint names. All these assets appear to be in possession and control of defendant. According to defendant's (joint) tax return, the net retainable income for 1956 (*after* taking off federal and state income tax) was $16,076.38.

In June 1950 the parties entered into a separation agreement wherein it was re-

cited that plaintiff had brought suit for separate maintenance and it was agreed that plaintiff was to have the exclusive use of the home without molestation on the part of defendant, and defendant agreed that on January 1 of the years 1951, 1952, and 1953, he would deposit in plaintiff's bank account a sufficient amount to bring such bank account to a total of $3,000 on said deposit dates. In addition, he agreed to pay all hospital and medical bills which were incurred by plaintiff. It was expressly agreed that this arrangement should terminate on January 1, 1954, unless sooner terminated by death or mutual consent, or that it might be extended or revised in accordance with changed conditions.

On May 24, 1957, plaintiff brought this suit, wherein she charged that defendant had without good cause abandoned and refused to maintain her. The petition contains the usual averments of good conduct on the part of the wife and charges defendant with various items of misconduct, including the calling of vile names, threats, and, principally, continual absentation and association with women of questionable character. It is averred that plaintiff is sixty-four years old, unable to walk, that her age and health are such that she cannot maintain herself and that she is in need of special medical treatment and nursing care; that all of the property of defendant was acquired through the joint efforts of the parties. Plaintiff alleged the fact of having made the previously mentioned support agreement which expired on January 1, 1954, that while it was in effect plaintiff was forced to spend part of the moneys received in order to collect the amount provided for therein, and that $3,000 is wholly inadequate to meet her needs. Defendant's answer put plaintiff's charges of misconduct in issue, but thereafter on October 12, 1957, the parties filed their stipulation which set forth the date of marriage and separation, alleged the fact that the parties cannot live together; admitted for the purposes of this action only that *the plaintiff is the innocent and injured party and entitled to separate*

*maintenance;* and agreed that the proof offered should be confined *solely to that sum of money to be awarded plaintiff* for such separate maintenance. Thereupon the court heard the evidence and by its decree awarded plaintiff $1,600 to be paid on November 1, 1957, and thereafter $3,200 per annum, payable $1,600 on January 1 and July 1 of each year, plus suit money in the sum of $100 and $200 attorney fees. From this judgment plaintiff has appealed.

Under the evidence in this case, plaintiff now lives, alone, in the downstairs rooms of a rather large house (one owned jointly by the parties) several miles from town. These downstairs rooms are furnished with an electric refrigerator and are heated by a large oil stove. Her kitchen stove burns bottled gas. As expressed by one witness, this house could do with some repair and modernization. Plaintiff is approximately sixty-four years old. She gets about only on crutches. A physician who examined her a week before trial testified that one leg is shorter than the other and that she has a pin in her hip joint and action in that joint is practically nil; she suffers from arthritis, high blood pressure or hypertension; and she is very nervous. He gave it as his opinion that it would be dangerous for her to remain alone, both because of high blood pressure and danger of falling, and that someone should remain with her all the time. Defendant in his testimony admitted that defendant walks on crutches and lives alone without help in the house. He expressed the opinion that she "couldn't make her own way" but that she does her own housework, takes care of her own flowers, and "sews a whole lot for her grandchildren." He did not know who does her washing. As to the financial arrangements, defendant contended that he had complied with the "temporary" agreement by paying or depositing to plaintiff's account each year the sum of $3,000 and that on two occasions at least he had paid,

in money or bonds, in excess of that sum. He admitted, however, that on two occasions he had not complied with the agreement to make the deposits until called upon by plaintiff's lawyer. He expressed the opinion that the plaintiff's grocery bill, utilities, and any other necessary household expense would amount to "I judge about thirty dollars or maybe more. I know about mine and I do my own cooking and mine runs about twenty dollars per month." Defendant testified that he was a frugal man, and the evidence bears this out.

The case was tried in October 1957. The defendant admitted that he had paid no money for plaintiff's support during that year. There is some suggestion that during the period of the last several years the plaintiff had at some time bought some bonds, but in what amount, and whether for $50 or $500, and whether they are still held by her, the record is silent. The plaintiff did not testify. We are satisfied from the record in this case that defendant retains possession, use, and control of all the jointly owned assets and all of the assets which were acquired by the joint endeavors of both the parties, and that plaintiff is without substantial money or assets which are available to her use.

### Opinion

We believe that the determination of the circuit judge in this case, for whose learning and acumen we entertain a very high respect, was based upon a very understandable interpretation of the Missouri decisions to the effect that the amount of plaintiff's judgment for separate maintenance was *limited* to her actual needs and necessities, judged in accordance with her past standard of living.

Speaking in general terms only, the amount to be allowed to the wife as separate maintenance is governed largely by the same broad principles which apply to allowance of alimony,[1] with the exception

---

1. Nelson on Divorce and Annulment, 2nd ed, vol. 2, sec. 14.52, p. 63; 42 C.J.S. Husband and Wife § 624, p. 252.

In Simmons v. Simmons, Mo.App., 280 S.W.2d 877, 880, a divorce case, we attempted to reach out and enumerate

that the allowance for maintenance is (hopefully) temporary, since the marriage contract is not finally terminated,[2] and therefore does not require as much permanency as in the adjustment of marital rights. However, it has been held that lump sum awards may be had in maintenance cases.[3]

The courts have set different methods by which they measure the amount to be allowed; this for the reason that what is proper depends upon a variety of circumstances which may be grouped generally under the heads of the husband's means, resources or ability to pay, and the needs of the wife as measured by her condition and station in life or that of her husband. But there are no fixed precedents, only guides.[4] One of the concerns of the courts is that the wife will be maintained in accordance with the manner and station in life to which she had been accustomed during her marriage.[5] And of course the primary purpose is not to enrich the wife at the expense of the husband,[6] or to permit the wrongdoing of the husband to accomplish his enrichment at the expense of the innocent and injured wife.[7]

In fixing the amount, reference should first be had to the ability, resources, and financial situation of the husband.[8] Consideration should be given to the contribution which the wife has made to the estate, and her rights or interests therein.[9] And the present circumstances of both parties are to be considered.[10] But actual dependency or want of funds on the wife's part is not a condition of maintenance after judgment.[11] And joint property in the hands of the opposite party is not considered as property readily available for support.[12]

An examination of the cases in this state will indicate the impossibility of applying any fixed rule in measuring the amount of separate maintenance or alimony on divorce.[13] The expressions used in one case

---

many and various items which might be the subject of consideration in determining the amount of alimony. A somewhat factually similar case is found in Gerke v. Gerke (divorce), 100 Mo. 237, 13 S.W. 400.

2. Prough v. Prough, Mo.App., 308 S.W.2d 294.

3. Wagoner v. Wagoner, 306 Mo. 241, 267 S.W. 654; La Presto v. La Presto, Mo., 285 S.W.2d 568; see Pickel v. Pickel, 291 Mo. 180, 236 S.W. 287.

4. 42 C.J.S. Husband and Wife § 624, pp. 252, 253.

5. Bingham v. Bingham, 325 Mo. 596, 29 S.W.2d 99; Reeve v. Reeve, Mo.App., 160 S.W.2d 804; Knese v. Knese, Mo. App., 217 S.W.2d 394; Woodman v. Woodman, Mo.App., 281 S.W.2d 555; Schwent v. Schwent, Mo.App., 209 S.W. 2d 546.

6. Reeve v. Reeve, Mo.App., 160 S.W.2d 804, 807; Knese v. Knese, Mo.App., 217 S.W.2d 394; Woodman v. Woodman, Mo. App., 281 S.W.2d 555.

7. Lemp v. Lemp, 249 Mo. 295, 296, 155 S.W. 1057, 1062; see Vordick v. Vordick, 205 Mo.App. 555, 226 S.W. 59.

8. Lemp v. Lemp, 249 Mo. 295, 296, 155 S.W. 1057, 1063; Shapiro v. Shapiro, Mo.App., 238 S.W.2d 886; Schwent v. Schwent, Mo.App., 209 S.W.2d 546; Eaton v. Eaton, Mo.App., 237 S.W. 896; Blair v. Blair, Mo.App., 110 S.W. 652; Bittel v. Bittel, Mo.App., 147 S.W.2d 139; Wells v. Wells, Mo.App., 117 S.W.2d 700; Schwer v. Schwer, Mo.App., 50 S.W. 2d 684.

9. Stokes v. Stokes, Mo.App., 222 S.W.2d 108; Coggburn v. Coggburn, Mo.App., 256 S.W.2d 836.

10. Shapiro v. Shapiro, Mo.App., 238 S.W. 2d 886.

11. Smith v. Smith, Mo.App., 300 S.W.2d 275; Woodman v. Woodman, Mo.App., 281 S.W.2d 555; Dietrich v. Dietrich, Mo.App., 209 S.W.2d 540; Junge v. Junge, Mo.App., 211 S.W.2d 733.

12. Burtrum v. Burtrum, Mo.App., 200 S.W.2d 80.

13. See 12 Missouri Law Review (1947), "Separate Maintenance in Missouri," (Ramsey), 138, 181.

are applicable to the facts in that case, but they are of little value in determining the amount in a case where the situation between the parties is not similar. One of the elements which is of first consideration in one case shrinks into comparative insignificance in another. Hence it is said that there is no fixed standard and each case must be decided upon its own peculiar facts.[14]

The maintenance statute (section 452.130, V.A.M.S.) is broad, comprehensive, and flexible. It fixes no standard except that the court "shall order and adjudge such support and maintenance * * as the nature of the case and the circumstances of the parties shall require." It will be noted that there is nothing in this statute which limits the wife's recovery to necessities or to any fixed standard of living. This statute is but a legislative recognition of the powers of the equity court which descended from the chancery courts. The action is *sui generis* and is governed by equitable principles.[15]

In Herbig v. Herbig, Mo.App., 245 S.W.2d 455, it is said that *the court must weigh the equities between the parties;* and we conclude that "the sum and substance of the various holdings is that the wife shall not merely have what necessity demands, but what complete justice requires."[16] We think that in balancing all the equities the words "necessities" and "standard of living" are of little value in determination of the question concerned in this case. Such items are always a matter of "consideration," but this is not a question of allowance made for temporary support prior to determination of the issues, and such expressions as used in some of the cases should not be considered as restrictions necessarily limiting the amount of the award in this case.

Since the agreement made in 1950 the cost of living has increased; likewise increased is the income from property which plaintiff helped to accumulate and which appears to be completely in the control of defendant. The plaintiff is several years older, crippled, ill, and, according to the physician, it is dangerous for her to remain alone. Someone should be with her. The evidence is that the cost of a practical nurse is $40 to $50 per week, plus board and room. We think an allowance of $5,600 per year would be modest under the circumstances. In arriving at this amount we have not considered any sum for serious medical expense and hospitalization, because it appears that defendant has not refused such in the past and there is no indication that he intends to refuse to provide such if it becomes necessary in the future. A maintenance award cannot be based upon sheer, unsupported apprehension.[17]

The judgment is modified by increasing the semi-annual award to plaintiff to $2,800, to be paid on the 1st days of January and July of each year, commencing January 1, 1958. The initial award of $1,600 (to be paid on November 1, 1957) and the allowance of suit money and attorney fees are approved, and in all other respects the judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.

14. Stokes v. Stokes, Mo.App., 222 S.W. 2d 108; Bittel v. Bittel, Mo.App., 147 S.W.2d 139; Hoecker v. Hoecker, Mo., 222 S.W. 387; Schwer v. Schwer, Mo. App., 50 S.W.2d 684; Simon v. Simon, Mo., 248 S.W.2d 560; Brooks v. Brooks, Mo.App., 211 S.W.2d 65.

15. Fawkes v. Fawkes, Mo.App., 204 S.W. 2d 132; La Presto v. La Presto, Mo., 285 S.W.2d 568; Meredith v. Meredith, Mo., 151 S.W.2d 536; Wright v. Wright, 350 Mo. 325, 165 S.W.2d 870; see Wagoner v. Wagoner, 306 Mo. 241, 267 S.W. 654.

16. Decker v. Decker, 279 Ill. 300, 116 N.E. 688; O'Neill v. O'Neill, 11 A.2d 128, 18 N.J.Misc. 82.

17. Herbig v. Herbig, Mo.App., 245 S.W.2d 455; Bingham v. Bingham, 325 Mo. 596, 29 S.W.2d 99.