ALVIN LEE GLICK, APPELLANT, v. MANASSEH M. GLICK, RESPONDENT.*
—41 S. W. (2d) 624.

Kansas City Court of Appeals. January 26, 1931.

*W. J. Allen* and *Nelson E. Johnson* for appellant.

*C. W. Myer* for respondent.

CAMPBELL, C.—This is an action for separate maintenance. From a finding and judgment adverse to her, the plaintiff appeals to this court.

It is recited in the petition that plaintiff and defendant were married to each other at Kansas City, Missouri, on or about the 30th of November, 1922, and continued thereafter to live together until the 15th day of September, 1927; that during all of that time plaintiff faithfully demeaned herself as defendant's wife; that defendant offered her such indignities as to render her condition in life as his wife intolerable, was guilty of acts of stinginess and argued and found fault over items of necessary expenses, and harrassed and annoyed plaintiff; that defendant requested plaintiff to work and labor with livestock and to work on his farm to the extent that it overtaxed plaintiff and placed her under physical and mental strain and rendered her unhappy; that defendant was careless and indifferent in his personal appearance, habits and conduct, wearing his clothing until it was soiled and offensive; that he was contentious, quarreled and nagged at plaintiff over the expense and management of their live stock and poultry and about trivial matters; that he would become angry and sullen and refuse to speak to plaintiff for long periods of time; that he was well able to furnish plaintiff a cook stove in good condition, yet he neglected and refused so to do, requiring her to use an old worn and defective stove, the use of which worried and annoyed her; that defendant promised to provide another stove but did not perform his promise; that defendant was well able to furnish plaintiff an automobile or other conveyance suitable for her use, but failed and neglected so to do, and required plaintiff to use an old worn and defective automobile; that he demanded plaintiff should not associate or be friendly with her next door neighbors and treated plaintiff with violence if she visited them and became enraged and abusive because she spoke to them; that he disliked her mother and wrongly terminated the mother's visit to plaintiff's home; that plaintiff's mother was injured in an accident in December, 1926, and defendant refused to furnish the necessary money to enable plaintiff to visit her mother; that defendant's daughter, Lucille, by a former marriage, and for whom defendant had great regard, was

neglected by defendant, to the worry and disturbance of plaintiff, and that plaintiff from her own funds assisted said daughter; that defendant subjected her to excessive sexual intercourse to her injury and distress; that defendant, on or about the 15th of November, 1927, without cause, abandoned plaintiff and has ever since failed and refused to maintain or provide for her.

The answer admits the marriage, denies all other allegations, and avers defendant treated plaintiff with kindness and affection; that plaintiff constantly nagged, quarreled and scolded him without cause, urged him to sell some of his land and to spend more money; that plaintiff became vexed and angry when he did not comply with her request; that plaintiff, in the presence of third persons, frequently called him a fool and a liar and applied to him other epithets of similar nature.

It appears this is the second suit between these parties. It is stated by respondent that plaintiff brought a prior suit for divorce which was voluntarily dismissed by her. There is a showing in the record that there was another suit brought by her but the nature and character of that suit is not revealed, except as we gather from the depositions taken in that suit, as well as the oral evidence, some of which was introduced in this trial, that the first case was an action for divorce or for separate maintenance. The record in this case, however, does not reveal the disposition of the first case.

Plaintiff testified that she first met the defendant in Kansas City, Missouri, and during the life of her first husband; that about eight months after the death of her first husband defendant came to see her at Carrollton; that he then proposed, the marriage followed, and they went at once to live on the defendant's farm near Hamilton, Missouri; that her furniture was brought to that home; that defendant paid the cost of delivery on one load but refused to pay for the other; that defendant "thought" that she ought to pay him for the corn used to feed the chickens she raised; that the cook stove at the farm was out of repair, would not properly perform, and although defendant promised to purchase a new stove, the matter ended in a promise; that the churn was old and dilapidated, and that defendant said it was good enough for him to use the balance of his life; that every time there was a bill to be paid defendant became quarrelsome; that she frequently took produce to town and was compelled to walk because defendant refused to take her in the car; that she helped work with the live stock and done some work in the field; that defendant had frequent spells of pouting and accused her of being the cause of the trouble, saying that she was disagreeable and extravagant; that during all of their married life he was contentious and critical; that he ordered one of the neighbors to leave the place; that he was abusive and talked loud

so that others heard him; that he failed to provide proper support; that she received the money for the eggs and chickens; that she ordered everything she wanted from the grocer, and that defendant paid the bills; that she occupied her office in town one day each week and thereby collected, during the time she lived with defendant, the sum of five hundred dollars; that about two years before the final separation plaintiff prepared to leave the defendant and so informed him; that other persons were called in, a reconciliation was effected, the plaintiff saying the defendant agreed to treat her right and to get a new cook stove and a new car; that during their entire married life defendant compelled her to submit to excessive sexual indulgence. It would serve no useful purpose to state the details of that abuse as accounted by plaintiff. The interested, if they see fit, may read the record.

The testimony contained in a deposition of plaintiff's mother, taken before the institution of the present suit, was offered. She testified plaintiff was a dutiful wife; that she took good care of the house and premises; that defendant was unclean in his person; that it was almost impossible to use the cook stove and defendant promised to buy a new stove; that defendant was contentious and complaining; that he forbid plaintiff to visit a neighbor who lived across the street, and compelled plaintiff to walk to town and carry produce, and that defendant was jealous because she and her daughter were on friendly terms.

Plaintiff's daughter testified to the same effect, and that the automobile was old and out of repair; that on several occasions while she was at the defendant's home she heard the plaintiff and defendant talking "away into the night;" that defendant refused to buy his daughter Lucille a dress to wear to her graduation; that before the marriage her mother had a very sweet disposition; that as the years passed she was entirely changed, became nervous and was not happy.

The president of a Charity Society testified that she visited the plaintiff's home; that the house was neat and clean; that the cook stove was rusty and warped on top and ashes would sift into the oven; that she solicited plaintiff for money for charity and the defendant objected; that defendant was "surly like," "didn't say anything," "would give you a mean look."

Plaintiff's brother testified he visited at her home; that defendant was contentious; that the cook stove was unfit for use and the automobile unsanitary; that he saw his sister mowing the lawn and doing outside work; that he slept in the room adjoining his sister's and that he heard his sister and defendant talking very late at night.

A witness who was present at the time when plaintiff was about to leave the defendant said he heard defendant promise plaintiff that

if she would not leave him he would buy her a new cook stove and a new car.

Other witnesses testified in effect that the stove was dilapidated; that the automobile was not in good repair; that plaintiff walked to and from her home to town.

As a part of the cross-examination of plaintiff, letters written by her at various dates from February, 1924, to January, 1927, were introduced. Therein plaintiff made statements in substance that her married life was happy. In one of them she said: "I will try harder to be what he thinks I am, a loving, helpful companion. I believe he grows more gentle and happier as the time goes on and we have lots of good visits together, talking of our children and our pride in them." . . . Daddy Glick is out doing the night work. I helped him all he would let me." In another letter written in January, 1927, she said: "Came home Monday evening found everything O. K. Daddy was so glad to see me and I was glad to get home for I had been on such a strain all the time I was at Carrollton." In another letter in speaking of the defendant she said: "He is adorable." Plaintiff's explanation of these letters is in effect that she was trying to look on the bright side and to conceal the true condition.

It is fairly inferable from plaintiff's own testimony that she would have endured all of the matters of which complaint is made except the sexual abuse.

Several witnesses testified on behalf of the defendant to the effect that they had been at his home; that the house was well cared for; that plaintiff appeared to be happy and contented, and some of them said that plaintiff frequently stated they were happy and were getting along nicely.

Other witnesses in effect stated that they had heard plaintiff call the defendant stupid, stingy, and an old fool, and several of them said the cook stove was in fairly good condition.

Defendant, in his own behalf testified, denying generally and specifically the various shortcomings attributed to him by plaintiff; that his income gross was two thousand to twenty-four hundred dollars per year; that the neighbor he ordered from his home was, in his opinion, a regular gossip and liar. The evidence does not reveal whether defendant's opinion in this respect was well or ill founded. He further testified that he was seventy-eight years old and that he did not know the plaintiff's age; that she proposed marriage to him and said she was going home with him; that when she was in a good humor she treated him nicely, but when out of humor called him bad names; that on the morning of the separation the plaintiff said "this is my day at the office. I wondered if you would take me over," to which he replied that he would, and it was

arranged they would start about ten o'clock; that he left the house and that when he returned he found a note written by plaintiff saying, "Daddy, I had lots to do today. I had to hurry on;" that he did not see her for several months; that when she did return she said, "Daddy, if you had gotten me that car I never would have gone." "Daddy, you have just lost your wife by not getting me that car." Defendant denied he abused plaintiff sexually. His evidence on that subject covers several pages of the record.

## OPINION

A proceedings for separate maintenance under section 7314 is an action at law, "that is to say, it is not a suit in equity, although it is governed by the same procedure." [Bingham v. Bingham, 29 S. W. (2d) 99, 101.] The plaintiff cannot prevail unless she proves facts such as would entitle her to a divorce. [Elsey v. Elsey, 297 S. W. 978, 979.] To maintain the action she must prove her case by a clear preponderance of the evidence. [Esworthy v. Esworthy, 11 S. W. (2d) 1078, 1082.]

If plaintiff's evidence relative to sexual abuse is given faith and credit, then she had the legal right to leave the defendant and to maintain this action. On the contrary, if her evidence on that subject is unfounded in fact, then her whole case must fail. In seeking the truth on that subject, resort must be had largely, if not entirely, to the evidence of plaintiff herself, and the personal testimony of defendant. Plaintiff said she endured the abuse for about three years; that she then prepared to leave him; that he promised if she would remain he would treat her right and buy a new cook stove and a new car; that she remained, and the abuse continued for a period of two more years. Her evidence is considerably weakened by the statement, contained in her letters, and by the statement made to the defendant to the effect that he had lost her because he did not get her a car. Said statements are in irreconcilable conflict with her claims at the trial.

It is evident, from the record, the learned trial judge did not credit the statements of the plaintiff on the subject of sexual abuse. He heard the plaintiff and the defendant, as well as the other witnesses testify, observed their demeanor, and was therefore in better position than we are to determine the value of their evidence. While in actions of this character we are not bound by the findings of fact of the court below it is our duty to defer to such findings. We will not disturb such findings "unless we can point to some good reason therefor." [Gibson v. Shull, 251 Mo. 485, 158 S. W. 322.]

In the case of Groff v. Longsdon, 239 S. W. 1087, 1088, the Supreme Court said, "the law is well settled that the findings of the chancellor will be presumed to be prima facie correct, and the pre-

sumption will continue until the other side shows to this court that the findings of the lower court were incorrect.''

Complaint is made that letters written by defendant to his daughter, Lucille, and in which he in substance suggested she make her evidence strong against plaintiff were, upon defendant's objection, excluded. Error is also assigned to the exclusion of evidence that before the marriage plaintiff had been operated upon and part of her genital organs removed. We have considered all of the rejected evidence, the same as if it had been admitted, but the result is not changed thereby.

Upon the record, plaintiff has failed to prove her case by a preponderance of the evidence. The judgment is for the right party and should be, and is affirmed. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is hereby adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.