Joscie M. Kent, Respondent, v. Bolckow State Bank, D. R. Harrison, Commissioner, et al., Appellant.—70 S. W. (2d) 129.

Kansas City Court of Appeals. April 2, 1934.

*K. D. Cross* for respondent.

*Grover C. Sparks* for appellant.

CAMPBELL, C.—The defendant Bolckow State Bank in liquidation has appealed from a judgment allowing plaintiff's claim in the sum of $4000, as a preferred one.

On July 30, 1930, Mr. Messick executed to plaintiff his check in the sum of $4000. The check at the direction of plaintiff was delivered to Mr. Hartley, cashier of the defendant bank. On August 13, 1930, said cashier endorsed plaintiff's name on the check and deposited it in plaintiff's checking account in the bank. Plaintiff testified that on the day the check was made she told Mr. Hartley to use it in purchasing bonds and that the latter said he would do so; that in two or three weeks thereafter she again told the cashier that she wanted "this money in bonds;" that later the cashier told her he had bought the bonds and put them in a trust company in St. Joseph for safe keeping; that she did not know until after the bank closed that the check had been deposited in her checking account; that in February, 1932, which was about two months before the bank closed, plaintiff and Mrs. Donahue, her niece, went to the bank and talked with its cashier. Mrs. Donahue testified that on this occasion she asked the

cashier "where is my aunt's $4000 bonds?"; that the latter said they were in the Empire Trust Company in St. Joseph for safe keeping. "We can't keep them in a little bank like this, they might be stolen," and that plaintiff said she had nothing to show that she had bonds and that the cashier said he would get the bonds and have them registered. After the bank closed, plaintiff, Mr. Cross, her attorney, and Mr. Kefer, her nephew, went to the bank, obtained plaintiff's bank box and made an inventory of its contents. Mr. Cross testified that on that occasion he asked Mr. Hartley where the $4000 in bonds were and that the latter replied "well, I didn't buy those bonds. If I had bought them I would have had to close the bank months before," and that when he deposited the money he expected to pay plaintiff interest on it. Both plaintiff and Mr. Kefer corroborated the evidence of Mr. Cross. Mr. Hartley testified for the defendant that he received the check and that plaintiff told him that she wanted the proceeds thereof used in purchasing bonds; that he said to her that there was a premium on the bonds "and it would take about a year's interest to pay it," and that she replied "whenever you think you can get them right, why, you can get them," and that nothing more was said about the bonds; that the bonds which he referred to in the conversation with Mrs. Donahue were three $100 liberty bonds. However, he did not deny that Mrs. Donahue asked him where her aunt's $4000 in bonds were, nor did he say that he informed plaintiff that the check had been placed to her credit in the bank. On cross-examination he was asked if he made the statement attributed to him by Mr. Cross. He answered, "I don't remember that, if I did."

The evidence is clear and convincing that the bank, acting through its cashier, received the check for the special purpose of purchasing bonds for plaintiff; that defendant's cashier told plaintiff that he had purchased the bonds and that they were in a trust company in St. Joseph for safe keeping; that plaintiff did not know that the bonds had not been purchased or that the check had been deposited to her credit until after the bank had closed.

The mere fact that the bank placed the check in plaintiff's general checking account did not create the relation of debtor and creditor for the reason that the deposit was made without the knowledge or consent of plaintiff. [Ellington v. Cantley, 300 S. W. 529, 531.] The defendant did not obtain title to the proceeds of the check. [In re North Missouri Trust Company of Mexico, Mo., Mattes v. Cantley, Commissioner of Finance, 39 S. W. (2d) 412; Kelley v. Joplin State Bank (Mo. App.), 63 S. W. (2d) 172, l. c.; Central Coal & Coke Co. v. State Bank of Bevier, 44 S. W. 2d) 188.]

The defendant argues that it is "almost unbelievable" that plaintiff did not know that the check was deposited in her checking account. Plaintiff testified that between the date of the making of

the check and the closing of the bank she had not received her vouchers nor statement of her account. Mrs. Donahue testified that about two months before the bank closed its cashier told her that plaintiff's $4000 in bonds were in a trust company in St. Joseph for safe keeping. After the bank closed its cashier was asked where the $4000 in bonds were. He replied in substance that he did not buy them, "If I had bought them I would have had to close the bank months before." At the trial when the cashier was asked whether or not he made that statement he said, "I don't remember that, if I did." The denial characterizes itself. The defendant contends that the statement of the cashier made after the bank closed was not binding on it. Be this as it may the statement, nevertheless, affected the value of the evidence of the cashier. The chancellor saw the witnesses and heard them testify. The decree discloses that he believed the evidence of plaintiff and her witnesses. While we are not bound by the findings of the chancellor it is our duty to defer to them. And we will not disturb such findings "unless we can point to some good reason therefor." [Glick v. Glick, 41 S. W. (2d) 624, 226 Mo. App. 276.] We do not find reason to disturb the decree. The judgment is affirmed. *Reynolds, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.