LEILA M. BINGHAM v. MILLARD BINGHAM, JR., Appellant.—29 S. W. (2d) 99.

Division Two, June 11, 1930.

*Glendy B. Arnold* for appellant.

598

*Gustave A. Stamm* for respondent.

DAVIS, C.—This is an action, under Section 7314, Revised Statutes 1919, by a wife against her husband, for maintenance and support. Tried to the court, plaintiff, the wife, was awarded a judgment of $15,000 annually for the maintenance of herself and children, and $5,000 for attorneys' fees. Defendant appealed.

The pertinent portion of Section 7314 aforesaid reads:

"When the husband, without good cause, shall abandon his wife, and refuse or neglect to maintain and provide for her, the circuit court, on her petition for that purpose, shall order and adjudge such support and maintenance to be provided and paid by the husband for the wife and her children, or any of them, by that marriage, out of his property, and for such time as the nature of the case and the circumstances of the parties shall require," etc.

The evidence adduced on behalf of plaintiff warrants the finding that plaintiff and defendant were married in Chicago, Illinois. on July 20, 1903. On the succeeding day they came to St. Louis to live, where they resided to the filing of this action on March 23, 1923. At the time of the trial December 14, 1925, plaintiff was forty-two years of age and defendant forty-seven. Three children were born of the marriage, all living at the time of the trial, two boys and a girl, Millard F. III., Fred and Ruth. They were then aged twenty-one, nineteen and eleven years, respectively. Prior to 1923, defendant held the position of manager of the St. Louis branch of Samuel Bingham's Sons Manufacturing Company. About February 3, 1923, he was appointed general manager of said com-

pany. The evidence fails to develop the amount of his salary prior to the year 1919, except that it may be inferred that he received more than $100 a week. For the years 1919 and 1920, he was paid a salary of $10,000 a year. He had no other income. Beginning with 1921, he received a salary of $14,000 a year. He stated later that the company paid him $14,000, but that the company used $4,000 and his salary was $10,000.

The par value of the shares of stock of the Samuel Bingham's Sons Manufacturing Company aggregated $100,000. The surplus was $800,000 to $900,000. The actual value of each share was $800 to $1,000. We gather from the evidence that in 1920 defendant purchased from his father 332⅔ shares of stock of said corporation and hypothecated them to his father upon the condition that as long as his father lived he would pay him the sum of $18,000 annually, and for the support of two other relatives, as long as they lived, the sum of $3,000 a year. His father died in December, 1921. The other relatives seem to be living. From 1921 to 1925, inclusive, the corporation paid an annual dividend of from ninety per cent to 125 per cent on the par value of its stock. It seems that in 1921 defendant's gross income was $44,000, and in 1922 $47,000. The value of his estate may be said to be $600,000 to $700,000. He had on deposit in the bank after suit filed from $18,000 to $26,000. He also owned bonds valued at $5,000 to $6,000, paying from 3½ to six per cent.

When plaintiff and defendant came to St. Louis to reside in 1903, a house was rented. Sometime thereafter defendant purchased a home on Crittenden Street. In 1921 he purchased a home at 3647 Flora Boulevard, paying $26,000 for it. He deeded the Crittenden Street property in part payment of the purchase price and was allowed $14,000. He built a garage after buying the Flora Boulevard property at a cost of $4,000.

It seems that prior to 1920 it was the custom for defendant to draw in part payment of his salary the sum of $100 a week. The balance seemingly was left with the company to draw as he desired it. The pay envelope with $100 in it he took home each week. Of this he gave to plaintiff $60, and sometimes more; to one son, $5; to another, $3; and to a houseman, $5. The amount he gave to plaintiff each week covered and was intended to cover food, such as groceries and meat, and in addition some dry goods bills. He paid all other expenses and bills. He denied telling his wife that that was the extent of his salary, but the record contains no evidence that he discussed his salary or financial affairs with her. She stated, in effect, that he at least led her to believe that the sum of $100 comprised his income, but it is evident that, had she stopped to reason, she would have known that his living and personal expenses exceeded the sum of $100 a week.

Plaintiff and defendant lived happily together until about January, 1922. Prior to that, however, she had received anonymous letters or communications informing her that defendant was associating with another woman. On showing him the letters and telling him of a telephone conversation, he thrice denied the accusation. In January, 1922, he admitted the association. It is needless to relate the details. Subsequent to coolness on his part and probably a strained feeling on her part, about January 15, 1923, he left home, saying then and previously he could not live without this woman. Suffice it to say there is no doubt regarding defendant's abandonment of plaintiff, without good cause. He admitted that his wife had asked him to return to live with her and that he had refused. In addition, there seems to be no doubt that plaintiff had many times, before and after this suit was filed, personally or through emissaries, importuned defendant to return to her, with the statement that all would be forgiven, and on each occasion he declined.

Defendant abandoned plaintiff about January 15, 1923. On March 23, 1923, she filed this action for maintenance. At the time he left home she had in the bank about $2500, accumulated from the money defendant gave her for household expenses. She kept a maid. He bought two Cadillac automobiles, one for her use and the other for his own.

Plaintiff testified that she did practically all the family sewing, including her own, and some for defendant. She said that she had clothing, but never the kind she should have had at any time, and that she was never able to feel well dressed. While, since 1923, he has given her more money than the $60, he sends it very irregularly, at no stated time, and in irregular amounts. Defendant looked after the maintenance of her automobile, except gasoline and incidentals. The house is in a bad state of repair, needing refinishing as well as the furniture. Defendant maintained his two sons at Cornell University at a cost of $5,000 a year. She said she did not know of any absolute necessities that she has not had. She kept no account of the money defendant gave her between the abandonment and the filing of the suit.

Prior to the filing of this suit, plaintiff's attorney had a conversation with defendant at defendant's office. The purpose of his visit was to influence defendant to return to plaintiff. It was at plaintiff's suggestion. The attorney testified that defendant said in substance: "I talked to Mr. Bingham about supporting his family at that time and he told me he would support them as and when he saw fit and it was nobody's business how he supported them; he would give them what he desired and he was going to decide it." Plaintiff's evidence tends to show that after suit was filed until the trial defendant gave her around $4500 a year, or more, and paid practically all of her bills submitted or sent to him, and the taxes.

Defendant's evidence consisted only of checks. Plaintiff identified his signature to them. They show that in 1923 the checks payable to plaintiff aggregated $4820.25; in 1924 the checks aggregated $5776.76; and in 1925 the checks aggregated $5692.99. The checks also seem to show that between February 19, 1923, and November 23, 1925, including the checks payable to plaintiff, defendant gave her and paid for her account and benefit and that of their children the sum of $31,948.52. The list of the checks show, however, that from February 19, 1923, to the time of filing suit, defendant gave plaintiff by check the sum of $600 and paid on behalf of herself and children the sum of $797.56. Other pertinent facts, if any, will be adverted to later.

Defendant in his brief admits (1) the defendant's abandonment of plaintiff, and (2) defendant's financial ability to provide for his family. He denies (3) defendant's refusal or neglect to support plaintiff and the children before the commencement of this suit, and (4) plaintiff's financial needs at the time of the trial.

I. We are inclined to the view that a proceeding for separate maintenance and support under Section 7314 is a statutory action at law, *sui generis;* that is to say, it is not a suit in equity, although it is governed by the same procedure. It is analogous to a statutory action for divorce. [Chapman v. Chapman, 269 Mo. 663, 192 S. W. 448; Perkins v. Silverman, 284 Mo. 238, 223 S. W. 895.] But, whether it is a statutory action at law or a suit in equity is of no importance, as the questions before us involve (1) the failure of the facts to justify the institution of the proceeding, and (2) the plaintiff's financial needs. The consideration of these questions is authorized by the record and evidence submitted, independent of the character of the proceeding. Moreover, the petition of plaintiff asks injunctive relief, and as both plaintiff and defendant tried it in the court below on the theory that it is a suit in equity, we will so treat it here.

II. It may be well to state that no question arises as to plaintiff's reputation. Her reputation is not only not attacked by defendant, but he tacitly, if not expressly, admits it to have been without blemish. The evidence establishes that she is a woman of refined sensibilities as well as a loving and kind wife and mother and a true helpmeet.

It may also be well to state that the record does not show that plaintiff filed an application for temporary maintenance or suit money. Whatever sums of money defendant personally gave her or contributed to her support to the time of the trial were given or contributed voluntarily, although we assume that defendant was

aware, as well as plaintiff, that the court had power to enter and enforce a money judgment to that end. The failure of plaintiff to file such application tends to confirm our ruling, later treated, that she was satisfied with the support given her by defendant.

We are convinced that, while they lived together as husband and wife, plaintiff was entirely satisfied with the substance and form in which defendant maintained and supported her. That she had all the necessities of life she admits, and this probably included a few of the luxuries. The mode of their married life may be characterized as living inconspicuously and simply, but well. It is probable that plaintiff became apprehensive when defendant abandoned her, but mere apprehension, without a failure or neglect on the part of a husband to maintain and provide for his wife, does not bring into existence a cause of action for maintenance. The purpose of Section 7314, Revised Statutes 1919, is not to enrich the wife, but to provide suitable support and maintenance for her upon the abandonment and failure or neglect of the husband to support and maintain her according to her reasonable necessities, taking into consideration, however, the manner in which she was accustomed to live with him and his ability to provide support. Defendant does not contend that, if a husband is contributing something to his wife's support before the beginning of the action, an action for separate maintenance does not lie. He does not contend that in actions for separate maintenance a demand by the wife before action brought is necessary in every case. We not only agree to defendant's interpretation of the statute and the law, but we think that the court has the power to examine the question of the sufficiency of the support on the same basis as though no provision had been made by the husband for the wife's maintenance. [ O'Brien v. O'Brien, 49 N. J. Eq. 436; Hollingshead v. Hollingshead, 91 N. J. Eq. 261.] However, while the court has the power to examine the question of the sufficiency of the maintenance, nevertheless, where the wife has been receiving substantial support from her husband, more than sufficient to supply her necessary wants, the question of a timely demand by her for a larger allowance is to be considered in determining the sufficiency of the allowance and the equities of the suit.

Defendant epitomizes his contention thus: "Where the husband manifests no unwillingness to support his wife, and furnishes her with substantial and comfortable support, pays her bills without restriction upon her credit, furnishes her with a comfortable home, all of which she accepts without complaint that it is insufficient or inadequate to her needs, a demand on the husband for an increase in allowance ought to be required before she can maintain an action. Such conduct is an admission that the support is satisfactory. If that be true, where is the husband's default? If what he gives

her does, in fact, maintain her in reasonable comfort, and she accepts it without complaint, is he not justified in assuming that he is doing all she demands? If she does not complain, how is he to know he is in default?''

Plaintiff's evidence unequivocally shows that, to the time of the abandonment, about January 15, 1923, defendant gave her for food supplies for the house and her personal expenses at least $60 every week. He paid all other bills. She made no complaint, even if a complaint was tenable. Between the abandonment and the filing of the suit, defendant sent plaintiff $600 in cash and paid bills for her benefit and the family amounting to $797.56. Plaintiff made no complaint nor asked for a further allowance Between March 23, 1923, the date she filed suit, and April 1, 1923, defendant sent her a check for $150, and paid bills for her benefit totaling $597.72. She still failed to make a complaint. The total amounts expended by him for the benefit of plaintiff and her children, during 1923, 1924 and 1925, aggregated nearly $32,000. In addition, she had the use of the house. We are unable to find in the record anywhere any evidence tending to show that plaintiff complained or intimated to defendant, after the abandonment, that her allowance was insufficient for her needs. Not only that, but she saved from her $60 a week allowance, before abandonment, during a period of ten years, at least $2500. During the three years intervening between the abandonment and the trial, she was able to increase her savings to over $4500. The evidence further shows that defendant maintained his children, and provided an education for them.

As we have said, the purpose of separate maintenance, under the statute, is not to enrich a wife, for by the action and an award of maintenance she loses none of her marital rights in his property. The purpose of the statute is to give her a reasonable and comfortable living according to the station in life of the parties and according to the style in which they have been accustomed to live, taking into consideration the property and income of the husband. Of course, an increased income would probably justify a larger allowance to permit an expansion of the wife's style of living beyond that to which she had been accustomed.

Plaintiff says that defendant kept from her the value of his property and the amount of his income. However, plaintiff knew, before she filed suit, that defendant's income was at least $44,000 annually, and that his property was valued at more than $500,000, for she so alleges in her petition. Notwithstanding, knowing his income and the value of his property, she made no complaint, nor demanded a larger allowance nor intimated to him that such was necessary or desired.

Without a complaint or demand on her part for a larger allowance, so as to give defendant an opportunity to increase it, where the

allowance and payments for her benefit afforded her a substantial living in the style in which she was accustomed to live, we do not think that defendant refused or neglected to maintain and provide for plaintiff. Notwithstanding defendant's abandonment of plaintiff and his association with the other woman, to award plaintiff a judgment for maintenance, when she had refused or neglected to demand an increased allowance, unjustly penalizes defendant. We do not determine that, upon a proper showing, the plaintiff is precluded, upon demand, from maintaining an action for a larger allowance than he gave her. We determine nothing further in that regard than that defendant's contributions, which were accepted by her without protest and which were apparently to her satisfaction, for her silence led defendant to believe that it was substantial and sufficient, were substantially sufficient to support her in her accustomed style, and that, without a demand for a larger allowance, under the facts and circumstances herein, a cause of action in her behalf did not arise.

The facts in this case are not analogous to the facts in Klepper v. Klepper, 193 Mo. App. 46, 180 S. W. 461. In that case the sum of $100 a month given the wife by the husband was manifestly insufficient support in accordance with the style in which he had supported her and his ability to pay.

Plaintiff maintains that her attorney, before the institution of the suit, inferentially at least, demanded a larger allowance. This is predicated on his testimony reading: "I talked to Mr. Bingham about supporting his family at that time and he told me that he would support them as and when he saw fit and it was nobody's business how he supported them; he would give them what he desired and he was going to decide it." The context of the attorney's testimony shows that he went to see defendant to arrange, if possible, a reconciliation. Be that as it may, it is certain that the testimony does not show a demand for additional maintenance or that defendant refused or gave him to understand that he refused to support them.

III. The evidence shows that, in the interim of two months between the abandonment and the filing of the suit, defendant expended for plaintiff's benefit the sum of practically $1400, or $700 a month. In the two years and ten months intervening between the abandonment and the trial, he gave to her or paid for the benefit of plaintiff and his family practically $32,000. He thus gave her, figuring also her occupancy of the house, about $12,000 a year. It is true that his gross income was around $45,000 a year; but, deducting from this gross amount the amount of $6,000 annually that he was under obligation to

pay his relatives, and his income tax and other necessary expenses that one has to meet in business to earn the income, it is evident, we think, that she received one-third of his net income. Certainly, we think, in the absence of a demand as well as a showing that she was not being supported in the style that their mode of life and his income justified, a cause of action did not arise.

The judgment is reversed and the cause remanded to the trial court with directions to dismiss plaintiff's bill of complaint without prejudice to her. *Henwood* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.