IRENE WRIGHT v. C. E. WRIGHT, Appellant.—No. 38244.—165 S. W. (2d) 870.

Court en Banc, November 12, 1942.

*Haymes & Dickey* for appellant.

*Roscoe C. Patterson* for respondent.

CLARK, J.—The parties to this suit were married in Webster County, Missouri, on October 19, 1927. In August, 1941, respondent, (hereafter called plaintiff), filed a suit for separate maintenance in the circuit court of Greene County, Missouri, against appellant, (hereafter called defendant), alleging that on June 13, 1940, defendant did, without good cause, abandon plaintiff and ever since has refused to maintain and provide for her. Defendant was personally served, filed answer, appeared and contested the suit in person and by attorney. A trial was had in November, 1941, resulting in a judgment requiring defendant to pay plaintiff forty dollars ($40.00) per month as separate maintenance. No appeal was taken from that judgment for maintenance.

On May 26, 1942, defendant filed a motion in the maintenance suit asking the court to set aside and terminate the judgment, alleging as ground therefor that on April 21, 1942, he had obtained a divorce from plaintiff in a district court in Nevada. Plaintiff filed her answer

to defendant's motion alleging, in substance: that her judgment for separate maintenance was an adjudication of all the matters set up in the petition for divorce filed by defendant in the Nevada court; that the judgment for maintenance is a property right which is protected by Section 30, Article II, of the Missouri Constitution, and Section 1, of the 14th Amendment to the Constitution of the United States, and cannot be invalidated by a judgment rendered in another state whose process does not run beyond the borders of that state; that the Nevada judgment shows on the face of the judgment roll that the matrimonial domicile of both plaintiff and defendant was in the State of Missouri, and all the alleged acts relied on as grounds of divorce were committed in Missouri, where both plaintiff and defendant had always lived and where defendant was employed at the time he procured the alleged divorce; that plaintiff had never been in Nevada, nor submitted to the jurisdiction of the court of that state, and the only process served on her in the divorce case was served in Missouri; that, in order to avoid the satisfaction of the maintenance judgment, defendant obtained a temporary leave of absence from his employment as a telegraph operator for a railroad and went to Nevada, and procured the divorce decree by falsely alleging that he was a *bona fide* resident of that state; that the divorce decree was procured by fraud and perjury and immediately after procuring it defendant returned to his home in Springfield and resumed his employment; that the Nevada court was without jurisdiction of either the subject matter or the person of plaintiff and the divorce decree is void; that by reason of said facts defendant does not come into court with clean hands.

Defendant filed a motion to strike out all of plaintiff's answer relating to the Nevada decree, which motion was overruled by the court, and defendant filed a reply in the nature of a general denial of plaintiff's answer.

After a trial, the court found the issues for plaintiff and rendered judgment overruling defendant's motion to terminate the maintenance judgment, and defendant has appealed.

At the trial in the circuit court defendant offered in evidence certain sections of the statutes of Nevada and the proceedings in the Nevada district court resulting in the decree of divorce. Defendant was present at the trial, but did not testify. Whereupon, plaintiff introduced the transcript of the testimony taken in the divorce case which had been ordered transcribed and filed by the Nevada court; also the pleadings and judgment in the maintenance suit in the Missouri circuit court. Then plaintiff offered oral testimony tending to prove: that plaintiff has lived in Missouri all her life and defendant has lived in this state at least since he was a small boy; that they were married at Marshfield, Missouri, in 1917, and, after living at various places in this state, moved to Springfield, in 1936, where they separated in 1940; that throughout his adult life defendant has been employed

as a telegraph operator by the St. Louis and San Francisco Railway; that in January, 1942, he made application for a pass to Reno, Nevada, and return, and requested and obtained a leave of absence from his employment for sixty days, commencing February 2nd; when he left Springfield he told a fellow employee he was taking a vacation; he arrived at Reno about February 3rd and stayed at a hotel there while in Nevada; on March 18th he filed suit for divorce alleging facts and circumstances which had occurred before the rendition of the maintenance judgment; on March 28th, by letter, he requested a renewal of his pass and an extension of his leave of absence stating that he could not leave Reno before April 25th or 26th; the divorce decree was rendered on April 21st and he was back at his work as a telegrapher at Springfield by April 27th and has lived there since.

This case has been thoroughly and ably briefed by counsel on both sides, and an unusually large number of cases have been cited from the courts of this state, other states and the Federal courts. The questions raised are difficult and important and the decisions are not altogether harmonious.

We will try to summarize and regroup appellant's contentions as follows:

That the Nevada judgment is entitled to full faith and credit in Missouri, either under the Constitution of the United States or under established rules of comity.

That the answer to defendant's motion is a collateral attack upon the Nevada judgment; because defendant's motion is not an independent action, and plaintiff's answer to the motion did not plead equitable defenses or ask for equitable relief; being a collateral attack, the validity of the Nevada judgment must be tried by the judgment roll alone and cannot be impeached by extraneous evidence.

That even if plaintiff's answer be considered a direct attack on the Nevada judgment, her allegations and proof are insufficient to show fraud in the procurement or concoction of the judgment.

On the theory that each state has the right to determine the marital status of its own residents, there is some divergence of opinion as to whether the courts of one state are required to give full faith and credit to a decree of divorce, rendered on constructive service, against one of its residents by a court of another state. We deem it unnecessary to discuss that question or to review the many cases cited on the point by counsel, for, whether by reason of comity ▮ or on account of the provision of the national constitution, it has been our consistent policy to recognize such decrees in the absence of proof of lack of jurisdiction or fraud in their procurement.

At the outset we deem it important to determine the exact nature of this proceeding. The original suit for maintenance brought by plaintiff is a statutory action at law, but is sui generis and based upon equitable principles. [Bingham v. Bingham, 325 Mo. 596, 29 S. W. (2d) 99.] Defendant's motion, although filed in the original

suit, is a new or independent proceeding, based upon matters which have occurred since the trial of the maintenance suit, its purpose being to set aside and terminate the maintenance judgment. It is a suit or proceeding to enforce the Nevada decree. Plaintiff's answer to this new proceeding sets up equitable defenses, to wit, that the Nevada decree was procured by fraud, that the Nevada court was without jurisdiction and the decree is void. Plaintiff's answer, in effect, asks the court to set aside and hold for naught the Nevada decree so far as it purports to affect the previous judgment for maintenance.

We think this constitutes a direct attack upon the Nevada decree. That is the effect of the holding in Marx v. Fore, 51 Mo. 69, which criticizes a contrary ruling in the earlier case of Warren v. Lusk, 16 Mo. 102. In Marx v. Fore, the suit was on a judgment rendered in Mississippi, the record of which showed appearance of defendant by attorney. Defendant set up in his answer that he was not a resident of Mississippi; that no service of process was had upon him and that he did not authorize anyone to appear for him. The trial court struck out this defense, but was reversed on appeal. Judge Bliss, in the opinion adopted by this court, said:

"The only question, then, is, whether the judgment may be attacked, and the want of jurisdiction and the fraudulent simulated appearance be shown by answer, or whether the party, who is not supposed to know of its existence until sued upon it, shall be compelled to go to the State where it was rendered, and there proceed directly to overthrow it. I infer that the latter will not be required, from several considerations. First, the suit is upon a judgment. If obtained by fraud and without jurisdiction, it is no judgment—is void, and will be so declared if the fact is made to appear; the defense goes to its very existence. Second, citizens are not driven to foreign States to protect their rights. If they have a legal right, or are being subjected to a wrong, they may look for protection to the tribunal having jurisdiction over them and the subject-matter, if the opposite party has placed himself within this jurisdiction. Third, it would, in many cases, be oppression or an absolute denial of justice. The inconvenience and expense of going to a distant State, of there employing counsel and litigating the matter, would often be so great that the suffering party would rather pay a pretty large judgment, although fraudulently obtained, than to undertake to set it aside. And besides, he might not succeed in his direct proceeding abroad until long after it had been collected at home. Fourth, the statute expressly authorizes equitable defenses, and provides for affirmative relief, where, under the old system, a bill was necessary under which a suit in chancery was instituted. Now, if the subject-matter of the bill shows a defense to a pending suit, it may be set out as a defense by way of answer."

Marx v. Fore has never been overruled and has often been cited with approval, later decisions going further and holding that when a

judgment of another state is sought to be enforced in this state the defendant may answer that such judgment was rendered . without jurisdiction of the person or subject matter, even though no equitable defense be set up in the answer. [Bonnet-Brown Sales Service v. Utt, 323 Mo. 589, 19 S. W. (2d) 888 (and cases cited); Topalian Bros. v. Asadorian (Mo. App.), 104 S. W. (2d) 713.]

Wagoner v. Wagoner, 287 Mo. 567, 229 S. W. 1064, is strikingly like the instant case. There the wife obtained a judgment for maintenance in the circuit court at St. Louis, on personal service, the judgment finding that her husband had abandoned her and that she was the innocent and injured party. The husband went to Nevada, stayed for the requisite length of time and procured a decree of divorce by publication and notice sent through the mail. His petition charged the wife with cruelty, etc. He then filed a motion in the circuit court at St. Louis to terminate the maintenance judgment as of the date of the Nevada divorce decree. The wife filed answer alleging that the Nevada decree was void because the judgment roll showed on its face the matrimonial domicile was in St. Louis, and also set up lack of jurisdiction in the Nevada court and fraud and perjury in procuring the decree of divorce. The circuit court found for the husband and was reversed by this court on appeal. After an exhaustive review of the authorities, we held that the "matrimonial domicile" of the wife was fixed in Missouri by the maintenance judgment and did not follow the deserting husband to Nevada; that he was never domiciled in Nevada; the Nevada court was without jurisdiction; the divorce was obtained by fraud, was void and did not invalidate the maintenance judgment and the wife was entitled to equitable relief.

Defendant (appellant) in the instant case contends that we should not follow the Wagoner decision, pointing out that we criticized it in a later case. A controversy between the same parties came to us on a later appeal in Wagoner v. Wagoner, 306 Mo. 241, 267 S. W. 654. That was an appeal by the wife from an order of the trial court sustaining the husband's motion to modify the judgment for maintenance on account of a change in the financial condition of the parties. Although the validity of the Nevada decree was not involved in the second appeal, Judge Graves, in writing the opinion of this court, expressed doubt as to the correctness of our ruling on the first appeal. in which he had concurred, and cited Howey v. Howey (Mo.), 240 S. W. 450. Judge Graves also wrote the opinion in the Howey case. There, a wife sued for a divorce in Missouri and the husband set up in his answer a decree of divorce procured by him in Florida. Then the wife in her reply alleged that the Florida decree was void, because obtained by false allegations as to the husband's residence. The opinion says that this constituted a collateral attack upon the Florida decree because it was made in the *reply*, and distinguishes the case from Marx v. Fore and other cases holding that an attack on such a judgment by *answer* is direct and not collateral. The opinion

quotes extensively, and with apparent approval, from Marx v. Fore, saying of that case, (240 S. W. 1. c. 456), "such answer was a direct attack in equity on the judgment in suit. There is a vast difference between an equitable defense in an answer, and an assault upon a judgment, pleaded as estoppel, in a reply." So, it is evident that Judge Graves, when he criticized the first Wagoner opinion, overlooked the fact that the attack there made on the foreign judgment was a direct one as defined in Marx v. Fore. Judge Graves also concurred in the banc case of Stuart v. Dickinson, 290 Mo. 516, 1. c. 547, 235 S. W. 446, which held that facts showing want of jurisdiction may be set up in the answer, and, under our code such pleading will be equivalent to a direct action by a bill in equity to set aside the judgment. That holding of Stuart v. Dickinson is approved in In re Estate of Thompson v. Coyle & Co., 339 Mo. 410, 1. c. 424, 97 S. W. (2d) 93.

In Lieber v. Lieber, 239 Mo. 1, 143 S. W. 458, the plaintiff alleged that she was the lawful widow of the deceased and asked that a deed be set aside and homestead and dower be set off to her. In her amended petition she alleged that a decree of divorce obtained by her former husband in Illinois was void because procured by fraud; that deceased falsely swore that he was a resident of Illinois and falsely swore that she was not a resident of that state, and asked to have the divorce decree set aside so far as it affected her marital rights in'his property. Judge Woodson wrote the principal opinion, holding that plaintiff's evidence did not sustain her allegations of fraud; that her petition constituted a collateral attack on the divorce decree, and, since the marital relation had terminated by the husband's death, the decree could not be attacked even directly. In discussing the question of collateral attack the opinion said that it was a suit to set aside a deed and admeasure homestead and only incidentally asked to have the divorce decree set aside. In support of his argument it was pointed out that the original petition did not mention the divorce decree. Judge Graves concurred in the result and strong dissenting opinions were written by Judge Valliant and Judge Kennish. Whether or not the principal opinion is soundly ruled, it is clearly distinguishable on the facts from Marx v. Fore and cases following it.

In Crane v. Deacon (Mo.), 253 S. W. 1068, the suit was to set aside a decree of divorce rendered in Missouri, and the question of collateral attack was not involved.

In Reger v. Reger, 316 Mo. 1310, 293 S. W. 414, the attack was on a domestic decree of divorce. Plaintiff, claiming to be the widow of deceased, sued for partition of his lands. The heirs of deceased denied that plaintiff was his lawful widow and alleged that a decree of divorce obtained by her in Jackson County from a former husband was fraudulently obtained. We held both that the evidence failed to sustain the allegations in the answer and that it constituted a collateral attack. Clearly that ruling furnishes no guide for us in the instant case.

In Ray v. Ray, 330 Mo. 530, 50 S. W. (2d) 142, plaintiff sued for a widow's interest in the property of deceased, alleging that he had fraudulently obtained a divorce from her on service by publication based upon a false affidavit that she was a non-resident. The evidence showed that after a separation from deceased she went to England; that, after deceased obtained a divorce, plaintiff married one Russell in New York, stating in her application for a marriage license that she was a resident of England and had been divorced from deceased. Later she obtained a divorce from Russell. We held, of course, that her evidence failed to sustain her allegations, and also said her petition constituted a collateral attack on the divorce decree.

Barrett v. Barrett (Mo. App.), 79 S. W. (2d) 506, was an application to obtain the custody of her children by a mother who had obtained a divorce and decree for the custody of the children in Kansas. The court of appeals held that there was no evidence to indicate the divorce decree was invalid, and also said it could not be collaterally attacked.

Keena v. Keena, 222 Mo. App. 825, 10 S. W. (2d) 344, was a suit to set aside a divorce decree obtained by the husband in Illinois and to adjudge maintenance to the plaintiff. The opinion treated the suit as a direct attack upon the Illinois decree (page 830), but held the evidence did not sustain the allegations of the petition.

In Hanna v. Hanna, 224 Mo. App. 1142, 32 S. W. (2d) 125, the wife sued for divorce and filed a motion for temporary alimony. Defendant in his answer alleged that he had obtained a divorce in South Dakota, and plaintiff replied that the decree was obtained by fraudulent allegations as to residence. On the motion for temporary alimony the South Dakota decree, which was fair on its face, was introduced by defendant and plaintiff introduced *no* evidence tending to show lack of jurisdiction or other imperfection in the rendition of the decree. The trial court entered an order awarding temporary alimony and defendant appealed from that order. On that state of the record the court of appeals properly reversed and remanded the case.

Other cases cited by appellant, such as In re Sisk, 305 Mo. 328, 265 S. W. 536, and Truesdail v. McCormick, 126 Mo. 39, 28 S. W. 885, relate to attempts to attack domestic judgments collaterally and are of no help in solving the questions now under consideration.

We are fully convinced that the pleadings in the instant case constitute a direct, not a collateral, attack on the Nevada decree. It remains for us to determine whether the allegations of plaintiff's answer and the evidence in support thereof were sufficient to justify the chancellor in refusing to recognize the decree. On these points defendant cites many cases, some of which we have already discussed. We concede that a judgment of a court of competent jurisdiction will not be set aside for false testimony at the trial as to the merits of the case, nor for a false affidavit as to the residence of the parties unless such affidavit is fraudulently made, and it is unnecessary to discuss

the cases so holding. We also concede that to vitiate such a judgment for fraud the same must be shown by clear, cogent and convincing evidence. [Hockenberry v. Cooper County State Bank, 338 Mo. 31, 88 S. W. (2d) 1031, l. c. 1036, and cases cited.]

We have studied all the cases cited by defendant and are unable to see how they can be so applied to the facts of this case as to convict the chancellor of error in refusing to recognize the Nevada decree.

It is universally held that "a state cannot exercise through its courts jurisdiction to dissolve a marriage when neither spouse is domiciled within the state." [Restatement of the Law, Conflict of Laws, page 168, sec. 111. See also, Vol. 9, R. C. L., page 399, sec. 195.]

"It is a well established proposition that, where one spouse goes to a state or country other than that of the matrimonial domicile for the sole purpose of obtaining a divorce and there obtains a divorce under a residence simulated for that purpose and not bona fide, or in good faith, or with any intention of residing there permanently, or indefinitely, the judgment is not binding on the courts of other states, or nations, or the District of Columbia." [27 C. J. S., page 1291, sec. 332, sub-sec. (b). See also Annotations in 39 A. L. R., page 677, and 105 A. L. R. 817.]

We think the evidence in this case conclusively shows that defendant went to Nevada, not for the purpose of making that state his home permanently or indefinitely, but for the sole purpose of establishing a pretended residence in order to obtain a divorce and thereby defeat the judgment rendered against him in Missouri. The evidence also justified the chancellor in finding that defendant, knowing that he was not a bona fide resident of Nevada, falsely represented to the court that he was a resident of that state and thereby induced the court to take jurisdiction of his case. We hold that such conduct amounts to fraud in the concotion or procurement of the Nevada decree which prevents its recognition as a valid judgment, at least in a direct attack such as the instant case.

There is another aspect of the matter. Defendant had his day in court upon the trial of the maintenance case. The finding there was that he had, without good cause, abandoned his wife. He did not appeal from that judgment. Instead he went to a distant state, where his wife was not likely to follow him, simulated a residence and, without informing the Nevada court that the matters alleged in his petition had already been decided against him by a Missouri court, obtained a decree which he now attempts to set up in the original maintenance case as a bar to the judgment therein rendered.

The maintenance suit was governed by equitable rules, one of which requires the litigants to come into court with clean hands. The defendant, by devious and indirect methods, should not be permitted to avoid the maintenance decree.

The judgment should be and is affirmed. All concur except *Gantt* and *Hays, JJ.*, absent.