245 S.W.2d 455 (1952)
HERBIG
v.
HERBIG.
No. 28215.
St. Louis Court of Appeals, Missouri.
January 15, 1952.
Rehearing Denied February 15, 1952.
Albert E. Hausman, St. Louis, for appellant.
Peter Cosmas, St. Louis, for respondent.
WOLFE, Commissioner.
The plaintiff brought this action for separate maintenance and the defendant filed a cross-bill praying for a divorce from her. The court denied the separate maintenance and dismissed the plaintiff's petition and also denied the defendant a divorce and dismissed his cross-bill. The plaintiff in due course brought this appeal.
By stipulation of counsel the transcript of the record has been limited to plaintiff's evidence and we have not been favored with a brief on behalf of the respondent.
At the time of this suit Irene C. Herbig was forty-eight years of age. She had been married, at some time past, to a man named Bennett and two sons had been born of that marriage. She later married Herbig and was granted a divorce from him in January of 1942, but remarried him in July of the same year. She lives in a home to which she holds title in her own name, and with her lives her twenty-two year old son, her other son having been killed in the late war. Prior to the separation Herbig, his wife, and her son all lived together in the home where Mrs. Herbig and her son now live.
Plaintiff testified that Herbig worked at night and frequently left on Friday afternoon for work and did not return until Sunday, but it appears that he spent this time at his brother's place on the river and did some fishing. There were quarrels between the Herbigs because she would not deed a one-half interest in the home to him. She *456 said that on occasions when they quarreled he referred to her son as a "gold brick" or "your darling". She stated that he was cold and indifferent toward her and that when she sought to caress him he would say "Be your age". Elaborating further upon the same subject she said that he was never a loving or affectionate man.
Plaintiff related that Herbig had left her on two prior occasions and gave her nothing to live on during those periods of separation. She also said that Herbig charged her with adultery before her lawyer, but she denied any infidelity.
On cross-examination, a letter she had written to her sister in 1948 was introduced, and in it she had stated: "I am a nagger, a thief, a cheat." No explanation of the letter was made by the plaintiff.
Several witnesses who had visited as friends in the Herbig home testified that it was a pleasant, well-kept home, and one of them stated that she had been a guest in the home in 1948 when Herbig left and that he did not return while she was there, which covered a period of a week.
On August 6, 1950, the plaintiff went to church and upon her return home she found that the defendant had taken his clothing and automobile and had left. On Thursday of that week she filed this suit for separate maintenance.
Herbig earned $58 a week after deductions and he received a pension of $37.50 a month arising out of military service in World War I. Mrs. Herbig worked part of the time as a domestic and earned an average of $35 a month. In addition to this she received $46 a month from an insurance policy on the life of her son who had been killed in the war, and the son living with her paid her $14 a week for room and board. The Herbigs had an account in the Southwest Bank in St. Louis in which there was on deposit $557 at the time the defendant left. Mrs. Herbig drew this out the day following Herbig's departure. She also had a joint account with her son at the Mercantile-Commerce Bank and Trust Company in which there was deposited the sum of $1243. She said this was her son's money and she gave him all of it except $100.
There was some evidence, although it is not clear, that Mrs. Herbig had an insurance policy belonging to her husband which she refused to give him because of an alleged "lien" she claimed to have against it. It appears that Herbig borrowed money on it to pay a gross sum of alimony awarded her at the time she divorced him in 1942.
The question before us is whether or not the trial court erred when it refused to grant the plaintiff separate maintenance and dismissed her petition.
Missouri Revised Statutes 1949, Sec. 452.130, V.A.M.S., provides that the court may upon petition of the plaintiff order that support and maintenance be provided and paid by the husband "as the nature of the case and the circumstances of the parties shall require", where it is shown that the husband without good cause abandoned his wife and refused or neglected to provide for her. It will be seen that there are two requisites for the award sought. The first is the abandonment and the second is a refusal or neglect to provide. Hoynes v. Hoynes, Mo.App., 218 S.W.2d 823; Brooks v. Brooks, Mo.App., 211 S.W.2d 65; Junge v. Junge, Mo.App., 211 S.W.2d 733.
From the rather scant record before us, it can be said that the husband did abandon his wife on August 6, 1950, so that there was proof of the first required element. As to the second necessary element, the defendant's refusal or neglect to provide for his wife, we are confronted with facts that do not seem to support the plaintiff. The evidence does not show any refusal to provide on the part of the husband and if at the time the suit was filed the plaintiff had been left with sufficient money for her present needs and those of the immediate future there would be no evidence of any neglect to provide. It will be recalled that this suit was filed four days after her husband left and it is at this time that plaintiff must have had a cause of action if she is to successfully assert one. The action cannot arise out of acts subsequent to the bringing of this suit. We stated in *457 Lindsay v. Evans, Mo.App., 174 S.W.2d 390, loc.cit. 395: "a suit which is prematurely brought may not be maintained, even though the cause of action has perchance accrued by the time the case is called for trial; nor may an amended petition in such a case set up a cause of action which had not accrued at the time the original petition was filed." Jegglin v. Orr, 224 Mo.App. 773, 29 S.W.2d 721; Wocet v. Seacat, Mo.App., 212 S.W.2d 449; Huffman v. Meriwether, Mo.App., 201 S.W.2d 469.
While suits for maintenance are statutory actions at law, they are based upon equitable principles, Wright v. Wright, 350 Mo. 325, 165 S.W.2d 870, and because of this the court is required to weigh the equities between the parties as they are revealed by the evidence in each case. With this in mind we note that there was evidence of prior separations of the two parties here involved and on those occasions the husband had failed to provide. While this might well give rise to apprehension that he would pursue the same course of conduct in the future, mere apprehension without failure or refusal on the part of the husband is insufficient. Bingham v. Bingham, 325 Mo. 596, 29 S.W.2d 99. We have no evidence touching upon the amount Herbig ordinarily gave to his wife for running the household and neither do we have any evidence of the expenditures that might be anticipated as necessary for Mrs. Herbig's maintenance. We do know, however, that Herbig left $557, which his wife had at the time this suit was brought, and this is a sizeable sum for persons of modest means and earning capacity.
The plaintiff states that despite the fact that she had this amount she is entitled to maintenance under the pronouncements we made in the case of Junge v. Junge, Mo.App., 211 S.W.2d 733. In that case it was shown that the wife had a considerable sum of family savings that was available for her support, but the evidence was clear that there had been a persistent refusal on the part of Junge to support his wife, and we simply held that she did not need to be reduced to poverty before her action would lie.
In the instant case the facts indicate that the plaintiff had all of the family savings, yet within a few days of her husband's departure she had sued him for separate maintenance.
It appears that there had been neither neglect nor refusal to provide and that the trial court properly dismissed the plaintiff's petition.
For the reasons stated it is the recommendation of the Commissioner that the judgment be affirmed.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly affirmed.
BENNICK, P. J., and ANDERSON and GREEN, JJ., concur.