**David E. SHARP, Respondent,**

**v.**

**Marie Miller SHARP, Appellant.**

**No. 24594.**

Kansas City Court of Appeals.

Missouri.

June 5, 1967.

Donald W. Giffin, Jerome T. Wolf, Spencer, Fane, Britt & Browne, Kansas City, for appellant.

Keith Martin, Payne, Jones, Anderson, Martin & Payne, Olathe, Kan., James E. Campbell, Kansas City, for respondent.

MAUGHMER, Commissioner.

Divorce case. No children involved. The defendant wife was granted a decree of divorce, but has nevertheless appealed. She says first, the court was without jurisdiction of the subject matter and, second, her motion for continuance should have been sustained.

The marital litigation between David E. Sharp, plaintiff in the suit before us and his wife, the defendant, Marie Miller Sharp, began in the District Court of Wyandotte County, Kansas, where Mrs. Sharp filed a suit for separate maintenance on February 19, 1964. That court on July 28, 1964, granted her separate maintenance and awarded the real estate in the State of Kansas held jointly by the parties, to her, free of any lien or claim of her husband. Mr. Sharp was never personally served with summons in that suit. In January, 1966, the Supreme Court of Kansas reversed the judgment and remanded the cause to the District Court of Wyandotte County, 196 Kan. 38, 409 P.2d 1019, where it has ever since quietly rested. On January 22, 1964, Mrs. Sharp filed suit against Mr. Sharp in the Circuit Court of Jackson County, Missouri, asking for a divorce, an accounting and a restraining order. Disposition of that suit will shortly be revealed.

On April 4, 1964, Mr. Sharp, as plaintiff, filed the instant suit against Mrs. Sharp in the Circuit Court of Jackson County, Missouri. Therein he alleged, among other things, that he had been "a resident of the state of Missouri for more than one whole year next preceding the filing of this petition, and each and all of the defendant's actions hereinbefore mentioned and complained of occurred within the state of Missouri". The stated grounds for divorce were indignities. To this petition defendant filed a motion to dismiss for want of jurisdiction, which the court, after hearing evidence thereon, overruled. The cause came on for hearing and trial on February 2, 1966, at which time defendant filed her motion for a continuance based upon unavailability of certain material witnesses and the illness of defendant. Coupled with this motion the defendant prayed for dismissal of the suit or continuance of the same until the defendant's suit for separate maintenance and determination of the rights of the parties in and to jointly owned Kansas real estate was determined by the District Court of Wyandotte County, Kansas. The court continued the cause until February 15, 1966, at which time defendant's counsel stated that February 15, was "a convenient date insofar as

my ability to try the case is concerned", but continued to urge a continuance on the ground that all of the property was in Kansas and the Missouri court should either continue or dismiss the Missouri action and allow the Kansas court to determine the status of the parties and their rights and interests in the jointly owned Kansas property. The application for continuance or dismissal on that ground was denied.

Evidence on the merits was then heard and the court, being cognizant that Mrs. Sharp's suit for divorce, which had been filed in Jackson County, Missouri was still pending, stated that the court would "on its motion consolidate" that case with the instant case and stated further "as I understand it this is also the desire of counsel". Whereupon counsel for Mrs. Sharp stated: "Yes, Your Honor, defendant desires these two cases be consolidated", and counsel for plaintiff said: "Plaintiff agrees to it". Next counsel for defendant moved to amend the cross petition which she had previously filed in the instant case "to conform to the evidence" and show that prior to the marriage plaintiff had been convicted of a felony—statutory rape—which fact he had concealed from defendant. The court agreed and the cross petition was amended. In this cross petition, as amended, defendant prayed for a decree of divorce and restoration of her previous name. The finding of the court was against plaintiff on his petition and for defendant on her cross petition. The ground for the divorce was specifically declared by the court to be for plaintiff's concealment from his wife of the felony conviction. Judgment was entered accordingly and included therein was an alimony allowance of $75 per month.

Counsel for both litigants assert and we agree that an appellate court in a divorce action sits de novo and reaches its own conclusions after a review of the record. O'Neil v. O'Neil, Mo.App., 264 S.W. 61. However, we point out that we do grant a degree of deference to the manifest conclusions of the chancellor as to credibility of witnesses.

Plaintiff and defendant were married on November 24, 1954, in North Kansas City, Missouri. For approximately two years they resided there and then moved to 1012 West 41st Street, Kansas City, Missouri, where they lived together as husband and wife until their separation on December 26, 1963. During those nine years of married life the parties acquired some real estate. A part of this real property was located in Merriam, Kansas, and a part in Kansas City, Kansas. The title was in both of their names. It is undisputed that Mr. and Mrs. Sharp were domiciled in Missouri and were residents of Missouri during the whole period that they lived together, which was just over nine years. They separated December 26, 1963, and Mrs. Sharp moved from the West 41st Street home. Mr. Sharp says that he remained in that home for a few days and until early in January, 1964, which was approximately 90 days before he filed the suit for divorce, which is now before us. Plaintiff testified that after he left the 41st Street home early in January, 1964, he lived for about two months in an apartment in Parkville, Missouri, which was owned by his friend Bill Wilson. Then, according to his testimony he lived in an apartment on Warner Plaza in Kansas City, Missouri until the last of May or the first of June, 1964, when he moved into the home of his parents in Overland Park, Kansas. Bill Wilson said plaintiff lived in his Parkville apartment from January until March, 1964, and that thereafter he had seen him in the place on Warner Plaza. The witness, Raymond Singleton, former fellow employee of plaintiff, testified that he visited Mr. Sharp on Warner Plaza early in 1964, "probably in April".

Mr. Sharp produced a rent receipt on the Warner Plaza apartment, but it was in the name of "J. Wyatt". He said he used this alias to try to conceal his whereabouts from his wife, who kept "harassing" him. Mr. Sharp described numerous indignities to

which he had been subjected by his wife during the period of their marriage. We believe it unnecessary to detail those incidents since the decree went to the defendant and plaintiff has not appealed. Plaintiff admitted that prior to the marriage he had been convicted of statutory rape, a felony, and that he had concealed this fact from his wife.

It is defendant's contention on the question of jurisdiction that plaintiff, on April 4, 1964, when he filed his petition for divorce, and for some time prior thereto, "lived" in one of the contestant's jointly owned apartments located at 5203½ Garner Lane, Merriam, Kansas. Deputy Sheriff, Marion Goddard, Johnson County, Kansas, testified that he visited this Garner Lane apartment in an effort to serve "papers" on plaintiff; that he heard someone in the house, but saw no one and was never able to obtain service. Mr. Glen Wallace said the Garner Lane apartment was occupied in March, 1964, and he saw plaintiff drive in and out with his automobile. He also moved furniture out of the place in 1965. The Saner family, neighbors, said plaintiff lived on Garner Lane from the summer of 1963 through June, 1964. Of course, Mr. and Mrs. Sharp were living together in Kansas City, Missouri until December 26, 1963, and those dates cannot be fully correct. Mr. Gerry Callahan, another neighbor, stated that he moved to Garner Lane in January, 1964, and that plaintiff was living there at the time. Mr. Charles Kramer resided at 5210 Garner Lane and as to plaintiff's living there said: "I wouldn't know when he moved in or when he moved out, but I would say he was living there approximately along about Easter time in 1964".

Section 452.050, V.A.M.S., provides that "No person shall be entitled to a divorce from the bonds of matrimony who has not resided within the state one whole year next before filing of the petition, unless the offense or injury complained of was committed within this state, or while one or both of the parties resided within this state;

* * *". Reading this section alone it might appear that no residence is required if the offense or injury complained of was committed within the state or while one or both parties resided within Missouri. However, Section 452.040, V.A.M.S. states: "The proceedings shall be had in the county where the plaintiff resides, * * *". The only Supreme Court case squarely in point seems to be the old case of Kruse v. Kruse, 25 Mo. 68, which was decided in 1857. There the offenses occurred in Missouri and while the parties were Missouri residents. However, when the plaintiff wife filed suit she was a resident of Kentucky. The Supreme Court in a short opinion ruled that the two sections (now 452.050 and 452.040, supra), must be considered together and only if plaintiff is a resident of Missouri may he or she obtain a divorce in Missouri. In McConnell v. McConnell, 167 Mo.App. 680, 151 S.W. 175, 176, plaintiff, a resident of New York, alleged his wife had committed adultery in St. Louis and petitioned for divorce in Missouri. The St. Louis Court of Appeals said:

> "If the offense or injury complained of was committed within this state, then the plaintiff in the divorce suit need not have resided within the state one whole year next before the filing of the petition. The plaintiff in such case may have resided here less than a year. But the statute nowhere authorizes one who is not a resident of the state to institute suit for divorce in this state under any circumstances, * * *".

See also Missouri Law Review, Vol. 24, p. 218 for a full discussion on Divorce Domicile in Missouri.

In the case before us it seems apparent that even though the offenses complained of by plaintiff occurred in Missouri, he must nevertheess have been a resident of this state when his petition was filed. If he was a resident on April 4, 1964, when suit was filed, then clearly he had been a resident for one whole year next before the filing of the petition since admittedly he had resided in

this state continuously from November 24, 1954, when the parties were married, until at or shortly after the date of their separation December 26, 1963.

■ "Residence" or "domicile" is largely a matter of intention, coupled with an act or acts in conformity thereto. Bradshaw v. Bradshaw, Mo.App., 166 S.W.2d 805. It is acquired by an intention to live at a place permanently, or for an indefinite time, coupled with actual bodily presence, though that presence need not be continuous. Madsen v. Madsen, Mo.App., 193 S.W.2d 507. In Schneider v. Friend, Mo.App., 361 S.W. 2d 308, syll. 4, it was held that "residence" once established within Missouri and not thereafter changed, is sufficient for maintenance of divorce action, notwithstanding physical absence of resident from the state for a short or long period of time.

■ The plaintiff, Mr. Sharp, admittedly on January 1, 1964, had been a resident of Missouri for more than nine years. Then he and his wife separated. He testified that for about two months thereafter, he lived in an apartment at Parkville in Missouri and then in an apartment on Warner Plaza in Kansas City, Missouri, until about June, 1964. His claim that he resided at those two addresses in Missouri was corroborated by two other witnesses. The suit was filed on April 4, 1964. If the trial court believed this testimony, then clearly plaintiff was a Missouri resident when suit was filed. He was seen by defendant's witnesses in Merriam, Kansas and in a property owned jointly by himself and his wife. There is no other evidence which could conceivably be construed as showing an *intention* on plaintiff's part to abandon his long time residence in Missouri prior to the time he filed the suit for divorce. The trial court concluded that plaintiff was and had been for the requisite period of time before the filing of the petition, a resident of Missouri, and that it had jurisdiction to try the cause. We believe there was substantial evidence which, if believed, justified such conclusion. We are in accord with it and defendant's assignment of error for lack of jurisdiction of the subject matter is denied.

Defendant's other alleged error is that the Missouri court should have dismissed the divorce action or at least have continued it until the Kansas court finally determined Mrs. Sharp's Kansas suit for separate maintenance and for a determination as to the respective interests of Mr. and Mrs. Sharp in and to their jointly owned Kansas real estate. It appears that there never was any personal service on Mr. Sharp with respect to this Kansas suit. Appellant says the doctrine of forum non conveniens dictates that the Missouri action be stayed pending final decision by the Kansas tribunals because "trial is practical and justice to the parties can be accomplished" only in the Kansas forum. In support of her contention appellant invites our attention to the case of Elliott v. Johnston, 365 Mo. 881, 292 S.W.2d 589. In that case all the parties were residents of Kansas and the automobile collision which was the subject matter of the litigation occurred in Kansas. The Missouri court dismissed the action brought in Missouri, applied the doctrine of forum non conveniens and held that Kansas was the natural and proper location for the litigation. That case is not our case. Appellant also invites our attention to Wright v. Wright, In Banc, 350 Mo. 325, 165 S.W.2d 870, as authority for the proposition that courts frown on "attempts to manipulate residence in order to obtain a favorable divorce result". In that case the parties were residents of Missouri and their marital rights had been determined by the Missouri courts in a separate maintenance suit. Thereafter the husband went to Nevada for the purpose of obtaining a divorce and failed to reveal that the matters had already been decided in Missouri. His motion to supplant the Missouri decision by the Nevada divorce decree was denied. We see no similarity between that case and the one before us. In the instant suit the parties were, at the time it was filed, both residents of Missouri. Mrs. Sharp herself filed a suit

for divorce in Jackson County, Missouri. She consented and requested that her suit for divorce be consolidated with plaintiff's suit. She also filed a cross petition responsive to her husband's Missouri suit and after the evidence had been heard, successfully moved to amend her cross bill by charging Mr. Sharp with concealing from her the fact that he had been convicted of a felony. Therein she also asked for a divorce. She was granted a decree of divorce and judgment of $75 per month as alimony. Now she asks that this Missouri litigation and judgment be either expunged or held in abeyance so that she may have her case weighed in the scales of justice by the Kansas courts. More particularly, she desires that her suit for separate maintenance and her claim of complete title to all of the Kansas real estate be litigated in the courts of Kansas.

The trial court concluded that on April 4, 1964, when Mr. Sharp's suit for divorce was filed he was a resident of Missouri and had been for more than one whole year. We have reached the same conclusion. Both parties at that time had lived in Missouri for more than nine years and up to the date of the separation. Certainly any marital transgressions during the active life of the marriage had been committed within this state. Missouri was the only state where jurisdiction existed. We know of no law, reason or rule, and counsel has cited us to none, requiring that marital litigation be conducted in that state where the parties jointly own real estate. Marriage is a personal relationship and all forums, so far as we know, predicate jurisdiction upon the residence or domicile of the parties—none upon the situs of their real estate holdings. Appellant says only the Kansas courts can "make a judgment on the merits of the case affecting Kansas property", whereas in truth and fact a Missouri court having jurisdiction of the divorce action with personal service, may inquire fully into the financial position of the spouses, what property they own, wherever it may be located, and may, as was done here, enter a judgment for ali-

mony. We rule this last point against appellant.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

HOWARD, P. J., CROSS and BLAIR, JJ., and FRANK D. CONNETT, Jr., Special Judge, concur.